CAMERON MUTUAL INSURANCE
COMPANY, Plaintiff-Respondent,

v.

Harry E. MADDEN, Jr.,
Defendant-Appellant.

No. 59123.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1976.

Rehearing Denied March 8, 1976.

Max von Erdmannsdorff, North Kansas City, for defendant-appellant.

George T. O'Laughlin, Kansas City, for plaintiff-respondent.

FINCH, Judge.

This is an appeal in a declaratory judgment action wherein plaintiff Cameron Mu-

tual Insurance Company (insurer) sought a declaration of its obligations under its combination automobile policy issued to defendant Madden to cover two automobiles. The precise issue presented is whether the insurance company is liable to Madden under the uninsured motorist and medical payments coverages on the automobile not involved in an accident as well as those on the vehicle which was involved.

The facts are stipulated. Madden owned a 1969 Chevrolet and a 1970 Chevrolet. The declaration page of the policy issued to Madden listed separately the itemized coverages for each of the two vehicles. Included for each car was $500 medical payment coverage (Coverage C) for each of which a premium of $3.19 was charged. In addition, uninsured motorist coverage (Coverage H) was listed for each car in the sum of $10,000 for each person and $20,000 for each accident. A premium of $3.00 was charged for this coverage on each of the cars.

On October 31, 1970, defendant's wife, while driving one of the insured automobiles, collided with one Fields, an uninsured motorist. The collision was caused by Field's negligence. As a result of injuries received in that accident, defendant's wife died.

The parties have stipulated that defendant has incurred monetary damages in excess of $10,000 plus more than $500 in medical expenses. As a result, defendant claims that he is entitled to recover up to a limit of $20,000 under Coverage H ($10,000 for each automobile) and to be reimbursed up to $1000 under Coverage C ($500 for each automobile). Insurer, on the other hand, claims that these coverages are not to be "stacked" and that its liability is limited to a maximum of $10,000 under Coverage H and $500 under Coverage C, which sums it admittedly has already paid to defendant.

The trial court, ruling that there was not to be "stacking" of these coverages, held that plaintiff insurer was not liable to Madden beyond the $10,000 uninsured motorist coverage and $500 medical payments coverage on the vehicle involved in the collision. On appeal the Missouri Court of Appeals, Kansas City District, reversed, holding that "stacking" was permissible and that insurer was liable to Madden for damage under its uninsured motorist coverage in an amount not to exceed $20,000 and under its medical payments coverage in an amount not to exceed $1,000. On application for transfer, on grounds which included a contention that the decision of the Kansas City District was in conflict with the opinion of the Missouri Court of Appeals, St. Louis District, in *Automobile Club Inter-Insurance Exchange v. Diebold*, 511 S.W.2d 135 (Mo. App.1974), we ordered the case transferred. We now decide it as though here on direct appeal. Art. V, § 10, Mo.Const. We reverse and remand with directions.

*Uninsured Motorist Coverage*

Briefly stated, insurer argues that Madden is limited to a maximum of $10,000 uninsured motorist coverage because: (1) paragraph 4(a) of the Conditions section of the policy clearly and unambiguously limits liability under Coverage H to the specified coverage of $10,000 for each person; (2) paragraph IV(d) of the Insuring section of the policy (referred to by insurer as the separability clause) clearly and unambiguously makes the policy applicable to whichever insured vehicle was involved, thereby eliminating "stacking" of the two coverages;[1] and (3) such result is not contrary to

1. Relevant portions of the foregoing paragraphs, as well as those of other policy provisions pertinent to the uninsured motorist issue, are as follows:
   "*Insuring Agreements*
   "I. * * *
   "*Coverage H—Uninsured Motorist Coverage.* To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *.

public policy and does not violate § 379.203, RSMo 1969, as amended by Laws, 1971, p. 398, § 1 and Laws, 1972, p. 1005, S.B. No. 458, § 1.[2]

The only instance cited to or located by us in which an appellate court of Missouri previously has considered the right of an insured to "stack" uninsured motorist coverages on two or more automobiles when provided by a single combination policy, as well as the effect thereon of § 379.203, was in *Automobile Club Inter-Insurance Exchange v. Diebold, supra,* the decision with which the opinion by the Kansas City District is asserted to conflict. In that case a single policy insured two automobiles. A premium of $3.00 was charged for uninsured motorist coverage on each vehicle listed. The separability clause of the policy stipulated, as here, that the terms of the policy were to apply separately to each automobile where two or more automobiles were insured thereunder. However, unlike the policy in this case, that clause went on to state:

> \* \* \* \* \* \*
> "III. *Definition of Insured.* \* \* \* (c) With respect to the insurance under coverage H the unqualified word 'insured' means the first named natural person and not a corporation, firm or partnership, and, while residents of the same household, the spouse of the first named natural person and the relatives of either.
> "IV. *Automobile Defined, Trailers, Private Passenger Automobile, Two or More Automobiles, Including Automatic Insurance.* \* \* \* (d) *Two or More Automobiles.* When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, \* \* \*."
> "Conditions
> \* \* \* \* \* \*
> "4. *Limits of Liability—Coverages A and H.* (a) The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by one person as the result of any one accident; the limit of such liability stated in the declarations as applicable to 'each accident' is, subject to

> "Regardless of the number of automobiles insured under this policy or other policies issued to the named assured or spouse by the exchange, if the automobile involved in an event making coverage applicable is one described in the declarations, the limit for each and every coverage afforded shall be that stated in the declarations for such automobile and the limits for other automobiles described in the declarations shall not be applicable. If the automobile involved in such event is not one described in the declarations, then the total limit of the exchange's liability shall not exceed the highest applicable limit of liability or benefit for any one automobile described in this or such other policy."

The court held that the foregoing separability clause was unambiguous and that by its terms Diebold was limited to one uninsured motorist coverage. He attacked the validity of the separability clause on the basis of § 379.203, citing *Steinhaeufel v. Reliance Insurance Companies,* 495 S.W.2d

> the above provision respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons as the result of any one accident. · \* \* \*"

2. That portion of the amended statute which is pertinent to the uninsured motorist coverage issue in this case provides as follows:
"1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. \* \* \*"
Subsequent references to § 379.203 are to this amended section.

463 (Mo.App.1973).[3] The court, while recognizing that in *Steinhaeufel* it had held that when a state enacts a statute (like § 379.203) which mandates specified minimum uninsured motorist insurance coverage in all automobile liability policies, the insurer may not avoid its statutorily imposed liability by limiting clauses which would reduce its liability below the coverage required by the statute, decided *Steinhaeufel* to be inapplicable. It did so on the basis that § 379.203 requires only that *each policy* issued contain a clause providing uninsured motorist coverage with limits of $10,000 for one person and $20,000 for one accident, irrespective of the number of automobiles issued by that policy. The policy issued to Diebold was held to comply with that requirement.

In the more recent case of *Galloway v. Farmers Insurance Company, Inc.*, 523 S.W.2d 339 (Mo.App.1975), the Kansas City District considered the "stacking" issue in a case involving two separate policies of insurance issued to plaintiff by the same company (rather than a single policy on two automobiles as in *Diebold*), each of which contained an uninsured motorist provision. Plaintiff Galloway was injured in a collision with an uninsured motor vehicle. He brought suit and recovered judgment for $25,000 for his injuries. He then sought recovery under the two insurance policies issued to him by Farmers, one of which covered the 1969 Chevrolet which he was driving when injured, and the other a 1971 Chevrolet which was not involved in the accident. Each policy contained an uninsured motorist clause with coverage limits of $10,000 for one person and $20,000 for one accident. Plaintiff sought $10,000 on the basis of each of said policies.

Defendant resisted "stacking" of coverages, relying on Condition 8 of each policy which stated as follows:

"8. OTHER INSURANCE IN THE COMPANY

With respect to any occurrence, accident or loss to which this and any other insurance policy or policies issued to the insured by the Company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under such other insurance policy or policies, would result in a total payment to the insured or any other person in excess of the highest applicable limit of liability under any one such policy."

In response, plaintiff asserted that Condition 8, when applied to reduce or eliminate uninsured motorist coverage provided by another policy, was in conflict with § 379.203 and, hence, invalid.

The trial court allowed "stacking". The court of appeals affirmed, concluding that public policy as expressed in § 379.203 requires that every automobile liability insurance policy in Missouri contain uninsured motorist coverage in at least the statutory amount, undiminished by provisions such as Condition 8. This was true, said the court, irrespective of whether such separate policies were issued by different insurers or, as in that case, by the same insurer. In so holding, the court said, 523 S.W.2d at 342:

"Defendant next argues that *Steinhaeufel* is different from the case at bar in that *Steinhaeufel* involved one policy carried by the host driver and a second policy carried by the injured party, whereas both policies in the present case were issued to and carried by the injured party. Defendant contends that stacking was granted in *Steinhaeufel* only because the insurance company there attempted to credit against its own liability payments that its insured had received from another source. In further amplification of this contention, defendant argues that an insurer should 'have no right, by vir-

**3.** In *Steinhaeufel* the court considered a clause which undertook to make the uninsured motorist coverage excess insurance, available only to the extent it exceeded coverage limits in other applicable policies. The court held such provision void under the statute.

tue of its contract with the insured, to interfere with that insured's separate rights under a different contract' with a different company, but that it does have a right to contractually limit its obligation under its own policies, where more than one. This attempted distinction is without substance. Public policy requires that coverage in the statutory amount under each of the policies stand undiminished by contractual limitation, regardless of whether the policies are issued by the same or different insurers. Numerous cases have permitted stacking of coverage under multi-policies issued by the same company to the same party, despite limiting policy clauses of the type under consideration. *State Farm Mutual Automobile Ins. Co. v. Harper*, 125 Ga.App. 696, 188 S.E.2d 813 (1972); *Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, 512 P.2d 507 (1973); *Van Tassel v. Horace Mann Mutual Ins. Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973); *Boyd v. State Farm Mutual Automobile Ins. Co.*, 260 S.C. 316, 195 S.E.2d 706 (1973); *Boetner v. State Farm Mutual Ins. Co.*, 34 Mich.App. 510, 191 N.W.2d 741 (1971); *Crenwelge v. State Farm Mutual Automobile Ins. Co.*, 277 So.2d 155 (La.App. 1973); *Harrington v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 295 So.2d 210 (La.App.1974); *Johnson v. Travelers Indemnity Co.*, 359 Mass. 525, 269 N.E.2d 700 (1971)."

The opinion expressly reserved and did not reach or decide the question, not present in that case, of what the result would be when a single policy covers two or more automobiles.

■ If we accept the premise of *Galloway,* and we do, that public policy as declared in § 379.203 mandates that when an insured has two separate policies containing uninsured motorist clauses, effect shall be given to both coverages without reduction or limitation by policy provisions, and that both coverages are available to those insured thereby, the question necessarily

arises as to what, if any, difference in applicability and effect of the statute there is when the insurance company elects to consolidate in a single combination policy coverages of two or more automobiles. May the insurer limit its liability to a single coverage, rather than for each car on which coverage is written and a premium paid, by the simple expedient of utilizing a single consolidated policy? Does limitation in this manner conform to the requirements of § 379.203?

We recognize that *Diebold* resolved this latter question by construing § 379.203 as requiring only that each policy provide minimum uninsured motorist coverage of $10,-000 for one person and $20,000 for one accident, regardless of the number of automobiles insured by that policy. In other words, according to *Diebold,* § 379.203 does not require that a policy insuring two or more automobiles provide separate and cumulative uninsured motorist coverage of each vehicle. On that basis the court held that clauses in the policy which had the effect of prohibiting "stacking" did not violate the statute and, hence, were not void as against public policy.

We are not convinced that such interpretation of § 379.203 is correct. We find more persuasive the reasoning and result in cases construing similar statutes in other states. For example, in *Tucker v. Government Employees Insurance Co.*, 288 So.2d 238 (Fla.1973), the Florida supreme court dealt with the issue of "stacking" of uninsured motorist coverages in a situation comparable to that with which we deal. We quote rather extensively from that case because what it says provides such a clear and reasonable interpretation of a statute like § 379.203.

Tucker purchased from the insurer an insurance policy which covered two automobiles. A separate premium was charged for uninsured motorist coverage on each of the two vehicles. Insured's daughter, while a passenger in one of the insured automobiles, was injured by the negligence of an uninsured motorist. The issue presented

was whether there was to be "stacking" of the two uninsured motorist coverages. Insurer contended there could not be, saying that a clear and unambiguous policy provision restricted liability to the specified limits of $10,000 for one person and $20,000 for one accident, regardless of the number of automobiles insured by the policy. After noting that the Florida uninsured motorist statute did not disclose any statutory basis for such a "stacking" exclusion in a policy issued to cover two or more automobiles, the court said, 288 So.2d at 241:

"The statute requires that each such policy cover any bodily injury loss of the insured or insureds caused by the negligence of any uninsured motorist. The statute provides that such coverage shall be included in any automobile liability policy covering 'any motor vehicle' in not less than the limits described in Section 324.021(7) 'for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . resulting therefrom.' However, this coverage is obviously not restricted to the limits of F.S. Section 324.021(7), F.S.A., for one vehicle when more than one automobile is covered. The quotation from *Mullis* herein reflects the applicable law where only one automobile is covered. Other cases, e. g., *Sellers v. United States Fidelity & Guaranty Co.* (Fla.), 185 So.2d 689, text 692, hold that an insured is entitled to multiple uninsured motorist protection where he is the beneficiary under additional coverage. The total uninsured motorist coverage which the insured has purchased for himself and his family regardless of the number of vehicles covered by his auto liability policy inures to him or any member of his family when injured by an uninsured motorist. Moreover, according to *Sellers v. United States Fidelity & Guaranty Co.*, supra, such total coverage is applicable to any uninsured motorist negligently injuring the insured or any member of his family

covered thereby. The statute admits of no authority in the insurer by a provision in the policy to limit coverage on the presumed basis that the uninsured motorist would only have covered himself with the minimum auto liability coverage required under F.S. Section 324.021(7), F.S.A. The determinant of the amount of coverage is the total which the insured purchases pursuant to the authority of the statute and not that which the insurer otherwise attempts to limit by a provision in the policy.

"An insured under uninsured motorist coverage is entitled by the statute to the full bodily injury protection that he purchases and for which he pays premiums. It is useless and meaningless and uneconomic to pay for additional bodily injury insurance and simultaneously have this coverage cancelled by an insurer's exclusion. The premium rates are standard and uniform on a per car basis. The insured's full protection cannot be whittled away by exclusions or limitations which presuppose he only intended to cover himself on the presumed basis of single car auto liability coverage had the uninsured motorist purchased the same. Compare *Dyer v. Nationwide Mutual Fire Ins. Co.* (Fla.1973), 276 So.2d 6, and particularly see *Employers Liability Assurance Corp., Ltd. v. Jackson* (1973), 289 Ala. 673, 270 So.2d 806.

"We must not confuse uninsured motorist protection as inuring to a particular motor vehicle as in the case of automobile liability insurance. It is bodily injury insurance which protects against such injury inflicted by the negligence of any uninsured motorist.

"It is an anomaly to contend that if two automobiles are combined in the coverage of one auto liability insurance policy with uninsured motorist protection added that an exclusion of the kind here involved may be validly inserted, but that if a separate policy covered each automobile such exclusion is invalid. The mere form of a policy—a combination cover-

age—should not be the predicate for an exclusion of additional coverage.

"It was held in *Sellers v. United States Fidelity & Guaranty Co.,* supra, that an insured protected by more than one policy of uninsured motorist insurance was entitled to recover under all such policies to the extent of his bodily injury by an uninsured motorist. The rationale of *Sellers* was that any contrary exclusionary clause to such recovery was invalid under the statute. The *Mullis* case, as well as *Salas v. Liberty Mutual Fire Ins. Co.,* Fla.1972, 272 So.2d 1, follows the *Sellers* rationale. The weight of authority over the nation follows this rationale." [4]

Another case which deals clearly and forthrightly with the issue confronting us is *Great Central Insurance Co. v. Edge,* 292 Ala. 613, 298 So.2d 607 (1974). In that case the Supreme Court of Alabama considered the effect of their uninsured motorist statute (noted by the court to be similar to the Florida statute). After reviewing earlier Alabama decisions dealing with this question, the court said at 609:

"These cases appear to have rather firmly established the principle that the law of this state with respect to uninsured motorist coverage precludes an insurer from collecting a premium for certain coverage, then taking that coverage away by a limiting clause, under the rationale that a contrary holding would be in violation of the uninsured motorist insurance statute. * * *"

Thereupon, after analyzing and relying upon the earlier case of *Employers Liability Assurance Corp., Ltd. v. Jackson,* 289 Ala. 673, 270 So.2d 806 (1972), the court said at 610, of 298 So.2d:

"Regardless of inclusion of language about limiting liability by clear and unambiguous language in *Employer's Liability,* as a part of a quote from *Sturdy,*

this court focused on the real issue, that being the fact that the insured had paid two premiums—that in effect the Jacksons had purchased two policies of insurance on one form and that the public policy expressed in the uninsured motorists' insurance statute prevented the insurance company from limiting its liability under such circumstances. Thus any suggestion that an insurer can limit such liability runs counter to the real holding. Therefore, the language from *Employer's Liability* relied on by the defendant-appellant should be and is expressly disapproved. Cases should not and will not turn on how well the insurer drafts a limiting clause because the law does not permit insurers to collect a premium for certain coverage, then take that coverage away by such a clause no matter how clear or unambiguous it may be." [5]

As pointed out in *Tucker,* when a statute requires that uninsured motorist coverage be included in any and every policy covering *any motor vehicle,* it would be an anomaly if, after an insurer issues a policy providing such coverage on two or more listed vehicles and the owner pays therefor, the question of how much of the purchased coverage is available to an insured (and whether the company may limit the amount thereof available by restricting clauses) depends solely on whether the company elects to write such insurance in consolidated or separate policies. Nowhere in § 379.203 do we find language which will support such an interpretation or produce such a result. The emphasis of this statute (as was true of the Alabama and Florida statutes) is on covering *any motor vehicle* and the protection thereby afforded, not on whether the insurer elects to write separate policies on each car or to consolidate all coverages in a single policy with one policy number.

Accordingly, we hold that the public policy expressed in § 379.203 prohibits the in-

---

**4.** The reference to *Mullis* in the foregoing quotation is to *Mullis v. State Farm Mut. Auto Ins. Co.,* 252 So.2d 229 (Fla.1971).

**5.** The reference to *Sturdy* in the foregoing quotation is to *Sturdy v. Allied Mut. Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969).

surer from limiting an insured to only one of the uninsured motorist coverages provided by a policy and that in this case both of such coverages, written on the two automobiles, are available to Madden, provided, of course, that insured is limited to recovery of damages suffered.

It follows that we need not consider whether paragraph 4(a) of Conditions and paragraph IV(d) of the Insuring section, insofar as they seek to restrict recovery to a single uninsured motorist coverage, are ambiguous or unambiguous.[6] It makes no difference for, as Chief Justice Heflin wrote in *Great Central*, 298 So.2d at 610, "[c]ases should not and will not turn on how well the insurer drafts a limiting clause because the law does not permit insurers to collect a premium for certain coverage, then take that coverage away by such a clause no matter how clear or unambiguous it may be." Insofar as *Automobile Club Inter-Insurance Exchange v. Diebold, supra,* expresses views contrary to what we herein hold, it no longer should be followed.

*Medical Payments Coverage*[7]

This issue differs from that pertaining to uninsured motorist coverage in that no statute requires the inclusion of medical payment coverage in an automobile policy. Consequently, we are concerned with interpreting and giving effect to provisions of the insurance contract, not public policy considerations.

It is insurer's position that the coverage applicable in this case is Division 1 of Coverage C because Mrs. Madden was injured while driving an automobile described in the policy. The extent of that liability, says insurer, is clearly and unambiguously limited by Condition 6 to the "each person" amount specified in the Declarations section for medical payments coverage, namely, $500. It contends further that the policy of insurance involved is one contract, not two, and that the separability clause (IV(d)) merely establishes applicability of the various policy provisions to each automobile but does not provide for "stacking" of the medi-

6. There is a split of authority as to whether clauses such as those relied on herein by insurer to limit availability of uninsured motorist coverage are ambiguous or unambiguous and as to the effect of an insured paying for such coverage on multiple vehicles. Annot. 28 A.L.R.3d 551 (1969). Numerous cases, cited in the foregoing annotation, arrive at the same result we reach on the basis that the separability and limits of coverage clauses are ambiguous. Cases decided subsequent to the annotation which also allow stacking of uninsured motorist coverages include *Moomaw v. State Farm Mut. Auto. Ins. Co.,* 379 F.Supp. 697 (S.D.W.Va.1974); *Cunningham v. Insurance Co. of N. America,* 213 Va. 72, 189 S.E.2d 832 (1972); *Blakeslee v. Farm Bureau Mut. Ins. Co. of Mich.,* 388 Mich. 464, 201 N.W.2d 786 (1972); and *Citizens Mut. Ins. Co. v. Turner,* 53 Mich. App. 616, 220 N.W.2d 203 (1974).

7. Policy provisions relevant to this issue, in addition to IV(d) which is set out in footnote 1, *supra,* are:
"*Insuring Agreements*
"*Coverage C—Automobile Medical Payments.* * * *
"*Division 1.* To or for *each person* who sustains bodily injury, sickness or disease, caused by accident, *while in or upon* or while entering into or alighting from *the automobile,* provided the automobile is

being used by the named insured *or his spouse* if a resident of the same household, or with the permission of either; or
"*Division 2.* To or for *each insured* who sustains bodily injury, sickness or disease, caused by accident, *while in or upon* or while entering into or alighting from, or through being struck by, *an automobile.*
\* \* \* \* \* \*
"*Exclusions*
\* \* \* \* \* \*
"(k) *under* coverage H and *division 2 of coverage C, to bodily injury to or sickness,* disease or death *of an insured sustained while in or upon or while entering into or alighting from or being struck by an automobile owned by any insured.*
\* \* \* \* \* \*
"*Conditions*
\* \* \* \* \* \*
"6. *Limit of Liability—Coverage C.* The limit of liability for medical payments stated in the declarations as applicable to 'each person' is the limit of the company's liability for all expenses incurred by or on behalf of each person, including each insured, who sustains bodily injury, sickness, disease or death as the result of any one accident." (Emphasis supplied.)
\* \* \* \* \* \*

cal payments coverages on each vehicle insured.

In response, Madden asserts that the effect of paragraph IV(d) is to create a situation which is exactly the same as if separate policies had been written to cover each of the vehicles insured, resulting in two separate medical payments coverages (Coverage C), both of which are available to him herein. In the alternative, he argues that if the combination policy issued by insurer herein does not clearly and unambiguously provide for separate coverages, as though there were separate policies, it, at the very least, is open to conflicting interpretations in which event the ambiguity is to be construed against the insurer and in favor of separate coverages.

■ The issue then is—what does this policy mean when it says that "[w]hen two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, * * * "? We conclude and hold that it is saying that each and every provision of the policy applies separately and independently to each vehicle listed, exactly as they would if repeated in separate policies on each such vehicle.

We arrive at this meaning for several reasons. In the first place each and every provision of the policy would apply to each vehicle listed even in the absence of IV(d). The inclusion of this separability clause was for a purpose and that necessarily was to make some change from the situation which otherwise would prevail. Therefore, instead of all provisions applying to the multiple vehicles on some kind of blanket or unified basis, they apply separately and individually to each, exactly as they would if in separate policies.

■ Secondly, the insurer charged two separate premiums for the medical payments coverage just as it would have done if separate policies had been issued. It is illogical to assume that insurer intended to collect and Madden intended to pay for single coverage ($500) identically the same premium as would have been charged for

two separate medical payment coverages if separate policies had been issued. Consolidating the two policies into one saves expense for the insurer and it logically follows that the separate insuring agreements were consolidated into a single policy for reasons of efficiency and economy, not for the purpose of reducing the coverages which would have been provided for the same money if separately issued.

Additionally, if the insurer had intended to limit medical payments coverage when two or more vehicles are covered in a single policy, it is logical to conclude that the company would have so stated in clear and unambiguous language. As the court said in *Southwestern Fire & Casualty Co. v. Atkins,* 346 S.W.2d 892, 895 (Tex.Civ.App. 1961),

> " * * * If the insurance company intended to limit the medical payments to the amount of $500 which a policy on only one car would provide, it should have so stipulated in no uncertain language, and it should not have charged a premium on each car separately. The policy has to be construed as a whole. In construing such provision together with the other provisions hereinabove referred to, we are of the opinion that appellee is entitled to recover the $500 additional medical payments for which he sues."

Likewise in *Virginia Farm Bureau Mutual Insurance Co. v. Wolfe,* 212 Va. 162, 183 S.E.2d 145, 147 (1971), the court said:

> " * * * If the company had intended to limit the medical payment coverage to one automobile, and thereby remove the conflict between the limitation of liability and the separability clauses, it could have done so by the use of clear and unambiguous language. See *Hansen v. Liberty Mutual Fire Insurance Company,* 116 Ga.App. 528, 157 S.E.2d 768 (1967), where the policy stated in plain and unambiguous language that the $1,000 limit for each person is the limit of the company's liability for all medical expenses incurred by each person, regardless of the

number of automobiles to which the policy applies."

Language used in the separability clause in the policy involved in *Diebold,* previously quoted herein, discloses that it is possible to clearly and explicitly spell out an intention to limit liability to single coverage even though multiple vehicles are listed. While we hold in this opinion, for reasons of public policy, that such clause is ineffective to restrict uninsured motorist coverage to less than that required by statute, it perhaps could limit medical payments coverage where purely contractual considerations are involved. That, however, has not been done in this case. Instead, the language employed with respect to limits of liability is exactly the same as that used when only a single vehicle is listed. It is not sufficient to limit Madden to a single medical payments coverage in this case.[8]

The result we reach is in harmony with the nature of medical payment insurance coverage. Such coverage does not depend upon and is not based upon negligence or a finding thereof. Instead, it represents a contractual obligation to pay medical expenses incurred following injuries under specific conditions. As the court recognized in *Dyer v. Nationwide Mutual Insurance Co.,* 276 So.2d 6 (Fla.1973), it has the character of accident insurance attached to the person of the insured and is independent of the automobile causing the damage. Expressing a similar view, the court in *Government Employees Insurance Co. v. Sweet, supra,* 186 So.2d at 96 said:

"The medical payments coverage applies to all medical expenses of the named insured while occupying or through being struck by an automobile, except an automobile owned by or furnished for the regular use of the named insured which is

not described in the policy. This is the feature which makes medical payments insurance coverage an entirely different type of insurance than public liability or property damage insurance where coverage is attributed to the vehicle causing the damage. *Medical payment provisions are closely akin to a personal accident policy; recovery is completely independent of liability on the part of the insured."* (Emphasis supplied.)

See also in this connection *Allstate Insurance Co. v. Leviss, supra,* and *Allstate Insurance Co. v. Mole,* 414 F.2d 204, 206 (5th Cir. 1969).

We hold that absent language specifically prohibiting such a result each separate premium paid for specified medical payments coverages produces for the insured that much additional protection for medical expenses incurred in a covered accident. Accordingly, we hold that the medical payment coverage provisions of this policy afford the defendant two separate coverages of $500 each, provided, of course, that recovery by insured is limited to medical expenses actually incurred.

The judgment is reversed and the cause remanded with directions to enter a judgment in accordance with the views herein expressed.

MORGAN, BARDGETT, HENLEY and DONNELLY, JJ., concur.

SEILER, C. J., dissents in separate dissenting opinion filed.

HOLMAN, J., dissents and concurs in separate dissenting opinion of SEILER, C. J.

---

8. The conclusion we reach is supported by the following additional authorities: *Harris v. Employer's Mut. Cas. Co.,* 33 Colo.App. 314, 519 P.2d 1227 (1974); *Allstate Ins. Co. v. Leviss,* 71 Misc.2d 628, 336 N.Y.S.2d 757 (Sup.1972); *Gov't Employees Ins. Co. v. Sweet,* 186 So.2d 95 (Fla.App.1966); *Travelers Indem. Co. v. Watson,* 111 Ga.App. 98, 140 S.E.2d 505 (1965); *Cent. Assurity Ins. Corp. v. Elder,* 204 Va. 192, 129 S.E.2d 651 (1963); *Kansas City Fire & Marine Ins. Co. v. Epperson,* 234 Ark. 1100, 356 S.W.2d 613 (1962). See also Annot. 21 A.L.R.3d 900 (1968); 8 Appleman's Insurance Law & Practice 188 (Cum.Supp.1973).

SEILER, Chief Justice.

I respectfully dissent. The question of whether uninsured motorist coverage "stacks" was before the court of appeals in *Automobile Club Inter-Insur. Exch. v. Diebold,* 511 S.W.2d 135, 137–39 (Mo.App.1974). There, as here, the single policy insured two automobiles which were separately listed with separate premiums. There, as here, it was contended the statute, Sec. 379.203, RSMo 1969, rendered anti-stacking provisions illegal. The court refused so to hold. The reasoning of the court was as follows:

"    .    .    [D]efendant asks that we address the validity of the separability clause in light of our uninsured motorist statute requiring a minimum amount of coverage on each policy of automobile liability insurance issued in this state. The parties to an insurance contract are free to place limitations and restrictions on the insurer's liability as the contracting parties may be willing to agree unless prohibited by statute or public policy .    .    . A contract of insurance is a voluntary contract and as long as the terms and conditions are not unreasonable or in violation of legal rules and requirements, the parties may incorporate such provisions and conditions as they see fit to adopt .    .    . Our uninsured motorist statute is a legislative mandate requiring that no automobile liability insurance be delivered or issued in this state unless uninsured motorist coverage is provided for not less than the limits set forth in the motor vehicle responsibility law, which in this case is $10,-000.00. This coverage was 'designed to close the gap in the protection afforded the public under existing financial responsibility laws, and *within fixed limits,* to provide recompense to innocent persons injured by motorists who lack financial responsibility' .    .    . There is no doubt that the policy which plaintiff issued to defendant provided the minimum statutory coverage. This court has held where such coverage has been provided, the insurer may not avoid its statutorily imposed liability by insertion in the policy of a limiting clause which restricts the insured from receiving the benefits of that coverage .    ,    . However, in this case, the clause in question only limits plaintiff's liability to the statutory minimum; it does *not avoid* the minimum altogether. Consequently, the separability clause *does not* undermine the purpose of Sec. 379.203.

"    .    .    . Here, the insurer is seeking only to limit its liability for each policy to the statutory minimum. The separability clause involved herein is not the same as the 'other insurance' clause held invalid in *Steinhaeufel* [*v. Reliance Ins. Co.,* 495 S.W.2d 463, 466 (Mo.App.1973)].

"Defendant infers that because the two cars were listed separately in the policy and separate premiums were charged for each, he has a right to separate coverage under the uninsured motorist provision. However, the statute makes no such demands on the insurer. Our uninsured motorist statute requires a minimum amount of coverage on each *policy* issued in this state. The policy in question is one contract, not two. Under it, two automobiles are insured. By its express provisions, the terms of the policy apply 'separately' to each automobile. We are not persuaded by the argument that plaintiff, by charging two separate premium payments for Diebold's two automobiles has in essence issued two separate policies of insurance. While the issue in this case is one of first impression in the State of Missouri, most jurisdictions have resolved this issue in accordance with the decision here .    .    . "    .    .    .

"    .    .    . This case involves only *one* policy which provided separate coverage for each insured automobile, neither of which was involved in the accident. Because the policy provides the minimum uninsured motorist coverage required by Missouri law, we do not find the separability clause to be void as against public

policy. We agree with plaintiff that Sec. 379.203 contains no language which would require the insurer to provide more than the minimum coverage per policy."

The principal opinion relies on a Florida case, *Tucker v. Government Employees Insurance Co.,* 288 So.2d 238 (Fla.1973), and an Alabama case, *Great Central Insurance Co. v. Edge,* 292 Ala. 613, 298 So.2d 607 (1974), which allow stacking, as being more persuasive than our *Diebold* case, but I do not find them so. Neither the Florida case nor the Alabama case makes a thorough analysis of what was the intent and purpose of the legislature in requiring a minimum amount of uninsured motorist coverage in statutes such as our Sec. 379.203, which is, as I see it, the key issue, nor do these cases consider the illogical consequences of "stacking" which are pointed out later herein. The principal opinion also places much reliance on the proposition that stacking or non-stacking ought not to be resolved on the basis of mere form of policy used— whether two separate policies or a single combination family policy—but I do not believe this is the real issue before us. The real issue is what the legislative intention was and what the policy provides. In my opinion, the *Diebold* case correctly analyzes the matter and I would follow it. I would not overrule it.

The principal opinion accepts the premise of *Galloway v. Farmers Insurance Company, Inc.,* 523 S.W.2d 339 (Mo.App.1975), that where an insured has two separate policies containing uninsured motorist coverage, one on one automobile and the other on another, effect shall be given to both coverages without reduction or limitation by policy provisions. This means that the coverage is cumulative or "stacked", so that although the insured has only $10,000/$20,000 coverage on one car to begin with, as soon as there is a second car with $10,000/$20,000 coverage on it, there immediately is

$20,000/$40,000 coverage available to either automobile. Having made the assumption that only by cumulative coverage can the statute be satisfied, the principal opinion then concludes that the same result must obtain with a family policy which covers two automobiles at the same time.

The Missouri appellate courts first examined Sec. 379.203 in *Sterns v. M.F.A. Mut. Ins. Co.,* 401 S.W.2d 510 (Mo.App.1966). After quoting and discussing at length various authorities,[1] all of them consistent in their tenor on the subject, the court adopts in summary a statement found in 7 Am. Jur.2d, Automobile Insurance, Sec. 135, p. 461:

> *"The purpose of the statute making uninsured motorist coverage compulsory . . . is to give the same protection to a person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability insurance policy . . ."* [at 517, emphasis by court of appeals].

I fail to see how stacking of coverage is consonant with—let alone required by—a statute with such a purpose. On its face the statute does no more than call for certain minimum coverage in every automobile liability policy. I do not believe the legislature intended to do more than make sure that a Missouri insured who had taken out liability insurance himself would at the same time be protected against the motorist who had not done so. It seems somewhat farfetched to believe that the legislature intended to require that the minimum motorist coverage on a single automobile would be $10,000/$20,000 but that for two or more vehicles it would be cumulative, so that if an insured owned not two but twenty vehicles and had uninsured motorist coverage on each, he would have $200,000/$400,000 uninsured motorist coverage

1. Comment, Uninsured Motorist Insurance, 48 Cal.L.Rev. 516 (1960); Anno., Rights and Liabilities under "Uninsured Motorist" Coverage, 79 A.L.R.2d 1252; Murphy and Netherton, Public Responsibility and the Uninsured Motorist, 47 Georgetown L.J. 700 (1959); Comment, Uninsured Motorist Coverage, 12 Drake L.Rev. 119 (1962).

on each. He would be much better off to collide with an uninsured motorist than with a responsible motorist who had complied with the statute and taken out $10,000/$20,000 liability coverage.

Looking at the matter another way, under the stacking theory, where an insured has two cars, the statute would be satisfied by taking out only $5,000/$10,000 uninsured coverage on each car, because stacking would operate to make it $10,000/$20,000 per car. If he had three, $3,333/$6,667 per car would do; with four, $2,500/$5,000, and so on.

I doubt if either the insurer or the insured harbored any of the foregoing expectations. In the policy before us, for example, the premium for the $10,000 uninsured coverage on automobile No. 1 is $3.00. The premium on automobile No. 2 for the same coverage is also $3.00. Under the principal opinion this means that the $3.00 which purchased $10,000 coverage on automobile No. 1, suddenly by virtue of a second automobile being added for an additional $3.00, now purchases $20,000 coverage. With a premium of $3.00 per automobile, there is no reason to suppose either does more than stand on its own bottom. Otherwise, the insurance company is forced to expand its uninsured motorist coverage every time the insured adds another vehicle to his policy, not only by the coverage specifically provided on the vehicle added for which the same premium is charged, but also by increasing the coverage on all vehicles previously covered by the policy without any additional premium for the increased coverage. Insurance premiums are usually arrived at by an actuarial allocation of risks, but under the theory adopted by the principal opinion, the insurer is a gratuitous benefactor with no way to calculate its exposure on the vehicles first insured as other vehicles are added to the policy. The insurer cannot tell what to charge for the first car because there is no way to foretell how many additional cars the insured may acquire during the policy period and each time he adds another car the insurer's exposure is increased on all the automobiles ahead of it on the policy. The insurer is presented with an after-the-fact increase in risk and exposure after the original premium has already been fixed.

A family owning, operating and insuring more than one automobile obviously offers greater risks to an insurer. A family usually owns more than one automobile because it wishes or needs to drive more. Mileage is an important factor in calculating risks. The increased automobile use (which may involve simultaneous use of several cars) poses a greater likelihood of damages. A multi-vehicle policy will require multiple premiums because there are multiplications of risks, but it does not follow that successive premiums should provide cumulative exposure as to amount of liability on each vehicle. Stacking of coverage ignores this economic and actuarial reality.

The principal opinion mentions that the law does not permit insurers to collect a premium for certain coverage and then take that coverage away by a limiting clause, quoting from *Great Central Insurance Co. v. Edge, supra.* But this assumes that the coverage provided is stacked or cumulative, whereas that is the point at issue. If all the statute requires is that the policy provide minimum uninsured motorist coverage, regardless of the number of automobiles insured, then no coverage is taken away by giving effect to the policy provisions which prevent stacking.

It should be noted also that the language of the statute speaks in terms of contract provisions of the policy. It refers to a policy "for the protection of *persons insured thereunder*" (emphasis mine). This means the parties to the contract can agree who is insured thereunder and what the extent is of the insurance. The statute does not require that the parties must agree uninsured motorist coverage must stack or that they cannot agree otherwise. So long as the policy provides the required minimum coverage, I believe the statute leaves unimpaired the general rule that the parties can

contract for risks and coverage as they see fit, adjusting the premiums accordingly. Under the contract before us, I do not believe the parties contracted for stacked risks and coverage.

I find nothing unfair about the insurer charging a separate premium for uninsured motorist coverage on a second or third automobile, anymore than would be the case in the charging of a separate premium for the ordinary public liability coverage on the second or third car. No one expects an insurance company to take on the risks of an additional automobile without being entitled to collect a premium therefor.

So long as there is coverage of at least $10,000 per automobile, as there is here, I see no reason why the insurer cannot provide, as I believe it has done by the policy provisions before us, that the maximum liability to its insured or spouse is whatever the stated coverage is on the automobile which is involved in the accident. I therefore dissent.