**AUTOMOBILE CLUB INTER–INSURANCE EXCHANGE, Plaintiff-Appellant,**

v.

**Larry M. DIEBOLD, Defendant-Respondent.**

No. 35579.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 11, 1974.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, F. Douglas O'Leary, St. Louis, Jackson, Thomasson, Dickerson & Gilbert, Paul V. Gilbert, Cape Girardeau, for plaintiff-appellant.

Limbaugh, Limbaugh & Russell, Richard D. Kinder, Joseph J. Russell, Cape Girardeau, for defendant-respondent.

McMILLIAN, Judge.

Plaintiff, Automobile Club Inter-Insurance Exchange, sought a declaratory judgment in the Circuit Court of Cape Girardeau to ascertain, under Missouri law, the extent of its liability under a policy of insurance issued by plaintiff to defendant Diebold. In his responsive pleading, defendant Diebold asked the court to award him judgment for the amounts due under the policy. The trial court entered judgment against plaintiff in the amount of $17,000.00 and plaintiff appeals. We reverse and remand.

The parties have stipulated the basic facts. On March 3, 1970, plaintiff insurance company issued a family automobile insurance policy to defendant Larry M. Diebold. This policy contained uninsured motorist insurance as required in § 379.203, RSMo 1969, V.A.M.S., (later amended by RSMo Supp.1971; Laws 1972, S.B.No.458, § 1). The policy also provided separate medical payments coverage. The policy insured two automobiles which were separately listed and a separate premium was charged for each coverage on each insured automobile. The declaration sheet shows that a lower overall premium was charged for the second automobile. The premium charged for uninsured motorist coverage was $3.00 for each car; and $6.00 on each car for medical payment coverage. The total amount shown as charged for the first car was $115.00 and for the second car was $73.00.

The uninsured motorist limit for one automobile for injury to one person was $10,000.00. The medical payment limit for one automobile was $1,000.00.

The policy contains the following provision under the "Conditions" section:

"4. Two or More Automobiles—Parts I, II, III and IV. When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each . . .

"Regardless of the number of automobiles insured under this policy or other policies issued to the named assured or spouse by the exchange, if the automobile involved in an event making coverage applicable is one described in the decla-

rations, the limit for each and every coverage afforded shall be that stated in the declarations for such automobile and the limits for other automobiles described in the declarations shall not be applicable. *If the automobile involved in such event is not one described in the declarations, then the total limit of the exchange's liability shall not exceed the highest applicable limit of liability or benefit for any one automobile described in this or such other policy."* (Emphasis added.)

This policy was in effect on April 8, 1970, when defendant Diebold was involved in an accident while operating an automobile not owned by him. Consequently, the accident occurred in an automobile "not . . . described in the declarations" as stated in the above-mentioned clause. It was stipulated that the accident was caused by the negligence of a driver operating "an uninsured automobile" as that term is used in the uninsured motorist section of the policy.

The issue here turns on the validity of the above "separability" clause of the policy which states essentially that if the automobile involved in the accident is non-owned, then the total limit of the plaintiff's liability shall not exceed the highest applicable limit of liability or benefit for any one automobile described in the particular policy. The parties have stipulated that if plaintiff is liable to defendant Diebold for uninsured motorist coverage to the extent of benefits applicable to only one of the insured cars, plaintiff's liability is $9,500.00. The trial court held that plaintiff is liable to defendant for uninsured motorist coverage for each of the two cars, totalling $17,000.00. The effect of this holding is to nullify the separability clause set forth above.

We are not here concerned with construing the meaning of the separability clause. An insurance contract couched in plain and unambiguous language must be given its plain meaning; it is only when the contract is ambiguous that a court may be called upon to construe it, and it is only at that time that a construction favorable to the insured must be adopted. Central Surety & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S.W.2d 76, 78 (1949); Steinhaeufel v. Reliance Ins. Companies, 495 S.W.2d 463, 466 (Mo.App. 1973). We find the separability clause to be unambiguous and therefore are not bound to construe the clause in favor of the insured.

Rather, defendant asks that we address the validity of the separability clause in light of our uninsured motorist statute requiring a minimum amount of coverage on each policy of automobile liability insurance issued in this state.[1] The parties to an insurance contract are free to place limitations and restrictions on the insurer's liability as the contracting parties may be willing to agree unless prohibited by statute or public policy. Webb v. State Farm Mut. Auto Ins. Co., 479 S.W.2d 148, 150 (Mo.App.1972); Steinhaeufel v. Reli-

---

1. The pertinent portion of § 379.203 RSMo 1969, V.A.M.S. reads:
   "1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom . . ."
   Section 303.030, RSMo 1969, V.A.M.S., a part of our safety responsibility law, requires minimum coverage as to bodily injury of not less than $10,000.00 for one person and not less than $20,000.00 for one accident in each policy of liability insurance to prevent suspension of the operator's license and the registration of the motor vehicle involved in an accident.

ance Ins. Companies, supra, 495 S.W.2d at 466. A contract of insurance is a voluntary contract and as long as the terms and conditions are not unreasonable or in violation of legal rules and requirements, the parties may incorporate such provisions and conditions as they see fit to adopt. State Farm Mutual Auto. Ins. Co. v. Ward, 340 S.W.2d 635, 640 (Mo.1960). Consequently, unless the separability clause which limits plaintiff's liability on uninsured motorist coverage of the statutory minimum of $10,000 per injury is unreasonable or violates public policy, the clause is valid. Our uninsured motorist statute is a legislative mandate requiring that no automobile liability insurance be delivered or issued in this state unless uninsured motorist coverage is provided for not less than the limits set forth in the motor vehicle responsibility law, which in this case is $10,000.00. This coverage was "designed to close the gap in the protection afforded the public under existing financial responsibility laws, and *within fixed limits,* to provide recompense to innocent persons injured by motorists who lack financial responsibility." (Emphasis ours.) Steinhaeufel v. Reliance Ins. Companies, supra, 495 S.W.2d at 466. There is no doubt that the policy which plaintiff issued to defendant provided the minimum statutory coverage. This court has held that where such coverage has been provided, the insurer may not avoid its statutorily imposed liability by insertion in the policy of a limiting clause which restricts the insured from receiving the benefits of that coverage. Steinhaeufel v. Reliance Ins. Companies, *supra,* at 468. However, in this case, the clause in question only limits plaintiff's liability to the statutory minimum; it does *not avoid* the minimum altogether. Consequently, the separability clause *does not* undermine the purpose of § 379.203, RSMo 1969, V.A.M.S.

The clause is distinguishable from the excess-escape clause held invalid in Steinhaeufel, *supra.* That clause provided that the uninsured motorist coverage was excess insurance, and would apply only to the amount by which the policy's limits exceeded the limits of other applicable policies. The clause was void as against the public policy of the state as expressed in its financial responsibility laws because it sought to escape the statutory minimum per policy altogether. Here, the insurer is seeking only to limit its liability for each policy to the statutory minimum. The separability clause involved herein is not the same as the "other insurance" clause held invalid in Steinhaeufel, *supra.*

Defendant infers that because the two cars were listed separately in the policy and separate premiums were charged for each, he has a right to separate coverage under the uninsured motorist provision. However, the statute makes no such demands on the insurer. Our uninsured motorist statute requires a minimum amount of coverage on each *policy* issued in this state. The policy in question is one contract, not two. Under it, two automobiles are insured. By its express provisions, the terms of the policy apply "separately" to each automobile. We are not persuaded by the argument that plaintiff, by charging two separate premium payments for Diebold's two automobiles has in essence issued two separate policies of insurance. While the issue in this case is one of first impression in the State of Missouri, most jurisdictions have resolved this issue in accordance with the decision here. See, Greer v. Associated Indem. Corp., 371 F.2d 29, 34 (5th Cir. 1967); Am. Liberty Ins. Co. v. Ranzau, 473 S.W. 2d 249, 254 (Tex.Ct.Civ.App.1971); Allstate Ins. Co. v. Zellars, 462 S.W.2d 550, 555 (Tex.1970); Wachovia Bank and Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 172 S.E.2d 518, 523 (1970); Rosar v. General Ins. Co. of America, 41 Wis.2d 95, 163 N.W.2d 129, 131 (1968).

Non-owned vehicle coverage by definition cannot be derived from the coverage on a particular owned vehicle. It is separate insurance and, moreover, does not apply if one of the owned vehicles gives

rise to the accident. Allstate Ins. Co. v. Mole, 414 F.2d 204, 207 (5th Cir. 1969). This court does not accept defendant's contention that a policy holder could increase his non-owned vehicle coverage by adding owned vehicles to his policy. The policy holder is already covered while driving all non-owned vehicles, regardless of the number of owned vehicles named in the policy, and pays no additional premium for non-owned vehicle coverage if an additional car is added to the policy. See Otto v. Allstate Ins. Co., 2 Ill.App.3d 58, 275 N.E. 2d 766, 768 (1971); Polland v. Allstate Ins. Co., 25 A.D.2d 16, 266 N.Y.S.2d 286, 287 (1966).

We are not here concerned with the issue of "stacking" whereby a party is allowed to recover from a second policy after exhausting the liability limits of the first. Such was the case in Steinhaeufel, *supra*. This case involves only *one* policy which provided separate coverage for each insured automobile, neither of which was involved in the accident. Because the policy provides the minimum uninsured motorist coverage required by Missouri law, we do not find the separability clause to be void as against public policy. We agree with plaintiff that § 379.203 contains no language which would require the insurer to provide more than the minimum coverage per policy.

The trial court erred in holding plaintiff liable for the liability limit as applied to each owned vehicle. On the basis of the stipulated facts, defendant Diebold was entitled to recover $9,500.00 under the uninsured motorist coverage provision and $1,000 under the medical payments coverage provision for a total of $10,500.

Accordingly, the judgment of the trial court is reversed and remanded with directions to enter judgment in favor of defendant and against plaintiff in the sum of $10,500.00.

Judgment reversed and remanded with directions.

SMITH, P. J., and CLEMENS and GUNN, JJ., concur.