**Charles E. GALLOWAY, Respondent,**

v.

**FARMERS INSURANCE COMPANY, INC., Appellant.**

**No. KCD 27125.**

Missouri Court of Appeals, Kansas City District.

May 5, 1975.

Richard H. Heilbron, Heilbron & Powell, Kansas City, for appellant.

Edward J. Murphy, Inc., Butler, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

WASSERSTROM, Presiding Judge.

The issue here is whether plaintiff may "stack" recovery under the uninsured motorist coverage of two separate automobile policies issued to him by the defendant. The trial court held that he could. Defendant appeals from that ruling.

The facts are undisputed. On May 18, 1972, plaintiff while driving a 1969 Chevrolet owned by him, came into collision with an automobile driven by McMillin. Plaintiff brought a personal injury suit against McMillin based on the latter's negligence and received judgment for $25,000. McMillin carried no insurance and filed a petition in bankruptcy.

Being unable to satisfy the judgment against McMillin otherwise, plaintiff sought recovery under his own automobile policies. He had purchased two policies from defendant, one on the 1969 Chevrolet involved in the McMillin accident, and another policy on a 1971 Chevrolet also owned by plaintiff. Plaintiff paid a separate premium for uninsured motorist coverage under each policy. There was a slightly lower premium charged under the second policy, but the parties have stipulated that the discount on the second premium was for sales purposes only and had no relevancy to the scope of coverage.

Each policy covered loss caused by an uninsured motorist to an amount of $10,000 per person. Plaintiff filed suit against defendant, asking $10,000 under each of his two policies, for a total of $20,000. Defendant resisted liability for the $20,000 claimed, relying upon Condition 8 contained in each of the two policies and which provides:

"8. OTHER INSURANCE IN THE COMPANY

With respect to any occurrence, accident or loss to which this and any other insurance policy or policies issued to the insured by the Company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under such other insurance policy or policies, would result in a total payment to the insured or any other person in excess of the highest applicable limit of liability under any one such policy."

Plaintiff contends that the quoted Condition 8 is invalid as being in conflict with § 379.203, RSMo Supp.1971, V.A.M.S. Defendant denies any such conflict but concedes that it must lose if this Condition does in fact contravene the statute. The narrow issue determinative of this case is therefore the validity of the quoted policy provision.

This same basic issue has been before the courts frequently in recent years. Commencing in 1957, the various states commenced the enactment of legislation requiring automobile liability insurance carriers to offer uninsured motorist coverage as a supplement to automobile liability insurance policies. By 1968, 46 states had adopted such statutes, and the inclusion of such coverage now has become mandatory in 15 states. Schermer, Automobile Liability Insurance, § 17.01. With the wide spread of this new type of insurance, it frequently happened that more than one uninsured motorist coverage would apply to the same accident. To cope with that situation, the insurance industry engaged itself in finding and devising policy provisions to limit the maximum amount of permissible recovery to only one coverage. These limiting clauses soon came before the courts for adjudication.

Two basically conflicting lines of authority quickly developed. One line of cases sustained these policy limitations on the ground that the uninsured motorist statute had the purpose of affording a party injured by the fault of an uninsured motorist the same financial protection that would have been available if the tort-feasor had complied with the

state's financial responsibility law. The view of these cases is that policy provisions limiting recovery to a maximum amount equal to that required under the financial responsibility statute, regardless of the number of policies or coverages applicable to the accident, are perfectly consonant with that statutory purpose and that the liability limitation should be given effect. This concept is generally referred to as the "substitute coverage" theory. A secondary ground given in these opinions is that to rule otherwise would be to grant the injured party a windfall where more than one policy applies to the same accident.

However, a heavy majority of the jurisdictions which have passed upon this subject have rejected the approach just outlined and have held that these policy limitations are generally unenforceable as being contrary to the public policy expressed by the uninsured motorist statute. These cases reason that the minimum amount of coverage specified by statute for each policy should not be subject to reduction by private contract. The cases adopting both the majority and minority rules are collected in the extensive annotation "Uninsured Motorist Insurance: Validity and Construction of 'Other Insurance' Provisions," 28 A.L.R.3d 551. These cases and the competing theories are also discussed in Widiss, "A Guide to Uninsured Motorist Coverage," § 2.58, page 105, et seq.; Tobin, "The Invalidity of the 'Other Insurance' Provision: A New Majority," 17 S.D.L.Rev. 152 (1972); and "Uninsured Motorist Coverage—Validity of Anti-Stacking Provisions and Workmen's Compensation Set-Off Clause," 30 Mo.L.Rev. 96 (1974).

The Missouri cases have adopted the majority view. The first case to be noted in this respect is Gordon v. Maupin, 469 S.W. 2d 848, 1. c. 851 (Mo.App.1971), which specifically rejected the substitute coverage theory of uninsured motorist coverage.

Then in Steinhaeufel v. Reliance Insurance Companies, 495 S.W.2d 463 (Mo.App. 1973), the substitute coverage theory was again rejected as was also the "windfall" argument; and based upon the general majority rule, an "excess-escape clause" in the policy was held contrary to § 379.203 and therefore unenforceable. Still more recently, the St. Louis District of this court in Automobile Club Inter-Insur. Exch. v. Diebold, 511 S.W.2d 135 (Mo. App.1974), reiterated the ruling in *Steinhaeufel* saying:

> "This court has held that where such [uninsured motorist] coverage has been provided, the insurer may not avoid its statutorily imposed liability by insertion in the policy of a limiting clause which restricts the insured from receiving the benefits of that coverage."

The decision of this court in Webb v. State Farm Mutual Automobile Insurance Co., 479 S.W.2d 148, 1. c. 152 (Mo.App. 1972) is not inconsistent with the foregoing Missouri decisions. In holding void a policy provision purporting to reduce the amount due under the uninsured motorist coverage by the amount received under the medical pay coverage of the same policy, this court did state that the public policy established in Missouri by the uninsured motorist statute is that "each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law." However, the issue in *Webb* was completely different from the one now under consideration. The quoted statement in *Webb* meant no more than that the insured was entitled to no less than he would have received if the tort-feasor had complied with the financial responsibility law. The authority principally relied upon in *Webb* was Stephens v. Allied Mutual Insurance Co., 182 Neb. 562, 156 N.W.2d 133 (1968). The Nebraska Supreme Court subsequently

in Protective Fire and Casualty Co. v. Woten, 186 Neb. 212, 181 N.W.2d 835, 837 (1970), a stacking case akin to *Steinhaeufel*, also adopted the majority rule as did *Steinhaeufel*; and in the course of doing so, the Nebraska court distinguished its prior *Stephens* case as having dealt with a completely different question. For the same reason that distinguished *Stephens* from *Woten,* so also *Webb* is distinguished from *Steinhaeufel* and the present case.

Defendant seeks to escape the force of *Steinhaeufel* on a number of grounds. First, it argues that *Steinhaeufel* involved only and was confined to a consideration of simply one kind of limiting clause which is generally known as an "excess-escape clause." Defendant points out that a similar clause is contained in the policies issued by it to plaintiff in the present case, but in deference to the *Steinhaeufel* case, defendant here disclaims any reliance upon its excess-escape clause. It insists, however, that Condition 8 is something distinctly different and is not ruled by *Steinhaeufel.*

The effort by defendant to whittle down the significance of *Steinhaeufel* so as to confine it to the particular limiting clause there presented is not persuasive. In the course of the *Steinhaeufel* opinion the court states at 1. c. 468, "the insurer may not avoid its statutorily imposed liability by insertion in the policy of *a limiting clause* which restricts the insured from receiving the benefit of that coverage" (emphasis added). The quoted language clearly means that no limiting clause, not just the particular clause there involved, can be given effect to keep the insured from receiving full benefit of the statutorily required coverage. This broad interpretation has been foreshadowed by the decision in French v. Farmers Insurance Company, Inc., 354 F.Supp. 105, 109 (D.C.Mo.1972), in which a plaintiff was covered by two policies issued to her father, both of which had uninsured motorist coverage applicable to her accident. The defendant insurance company in that case (being, incidentally, the very same insurance company which is defendant in the present case) resisted stacking on the basis of an "other insurance" clause (similar to the excess-escape clause in *Steinhaeufel*) and also upon the same Condition 8 which is urged as a defense in the present case. The *French* opinion accurately predicted that Condition 8 would be held unenforceable by the Missouri appellate courts:

"However, where the public policy of the state will not permit an 'other insurance' excess-escape clause to limit the insured motorist coverage, such states have generally refused to permit that result to be achieved by resort to an 'other insurance in the company' clause. Booth v. Seaboard Fire & Marine Insurance Company, 431 F.2d 212 (8th Cir. 1970), (applying Nebraska law). Smith v. Pacific Auto Ins. Co., 240 Or. 167, 400 P.2d 512 (1965); Bryant v. State Farm Mutual Auto Ins. Co., 205 Va. 897, 140 S.E.2d 817 (1965); Sellers v. United States Fidelity & Guaranty Company, 185 So.2d 689 (Fla.1966).

\* \* \* \* \* \*

"Since we have held that the Supreme Court of Missouri would apply the excess-escape clause of Condition 13 only after adjudicated damages had been recovered, we conclude that a similar and consistent position would be taken vis-a-vis the 'other insurance in the company' provisions of Condition 8."

■ Defendant next argues that *Steinhaeufel* is different from the case at bar in that *Steinhaeufel* involved one policy carried by the host driver and a second policy carried by the injured party, whereas both policies in the present case were issued to and carried by the injured party. Defendant contends that stacking was granted in *Steinhaeufel* only because the insurance company there attempted to credit against its own liability payments

that its insured had received from another source. In further amplification of this contention, defendant argues that an insurer should "have no right, by virtue of its contract with the insured, to interfere with that insured's separate rights under a different contract" with a different company, but that it does have a right to contractually limit its obligation under its own policies, where more than one. This attempted distinction is without substance. Public policy requires that coverage in the statutory amount under each of the policies stand undiminished by contractual limitation, regardless of whether the policies are issued by the same or different insurers. Numerous cases have permitted stacking of coverage under multi-policies issued by the same company to the same party, despite limiting policy clauses of the type under consideration. State Farm Mutual Automobile Ins. Co. v. Harper, 125 Ga.App. 696, 188 S.E.2d 813 (1972); Clayton v. Alliance Mutual Casualty Co., 212 Kan. 640, 512 P.2d 507 (1973); Van Tassel v. Horace Mann Mutual Ins. Co., 296 Minn. 181, 207 N.W.2d 348 (1973); Boyd v. State Farm Mutual Automobile Ins. Co., 260 S.C. 316, 195 S. E.2d 706 (1973); Boetner v. State Farm Mutual Ins. Co., 34 Mich.App. 510, 191 N. W.2d 741 (1971); Crenwelge v. State Farm Mutual Automobile Ins. Co., 277 So. 2d 155 (La.App.1973); Harrington v. Alabama Farm Bureau Mut. Cas. Ins. Co., 295 So.2d 210 (La.App.1974); Johnson v. Travelers Indemnity Co., 359 Mass. 525, 269 N.E.2d 700 (1971).

Defendant next argues that stacking was denied in Automobile Club Inter-Insur. Exch. v. Diebold, supra, where one insurance policy for separate premiums gave uninsured motorist coverage to two separate automobiles and under circumstances where both coverages applied to the accident which gave rise to the plaintiff's injuries. Defendant argues that the realities of this case are the same as *Diebold* and that the same result should be reached. In this respect defendant argues that, "it does seem unreasonable that where a company issues one policy, but separately insures two different vehicles, charging separate premiums for separate coverages, that stacking of the two UM coverages may be denied and yet under a situation identical except for the fact that two separate policy numbers have been assigned to the separate automobiles, stacking UM coverages should be permitted."

The answer to this protest is set forth in the *Diebold* opinion where the court expressly and emphatically pointed out that, "[o]ur uninsured motorist statute requires a minimum amount of coverage on each *policy* issued in this state." (Emphasis in the original). On that basis the court expressly distinguished between the situation there involved of a single policy covering two automobiles as against the situation in the present case of *separate* policies covering each of the automobiles. The *Diebold* opinion goes on to underscore this distinction by the statement, "[w]e are not here concerned with the issue of 'stacking' whereby a party is allowed to recover from a second policy after exhausting the liability limits of the first."

Whether *Diebold* was correctly decided or not, that decision cannot deny stacking in this case. Once the majority rule be adopted, as it has been in Missouri, it inevitably follows that Condition 8 in defendant's two policies here involved is invalid and unenforceable. What the result should be in a one-policy multi-automobile situation is beside the point here. It should be mentioned that a number of other jurisdictions permit stacking in the multi-policy situation, while at the same time denying stacking in the situation of a single policy covering more than one automobile. Hurles v. Republic Franklin Insurance Co., 39 Ohio App.2d 118, 316 N.E.2d 494 (1973); Westchester Fire Insurance Co. v. Tucker, 512 S.W.2d 679 (Tex.1974);

**344**

Talbot v. State Farm Mutual Automobile Insurance Co., 291 So.2d 699 (Miss.1974).

Finally, defendant cites a number of cases from other jurisdictions giving effect to anti-stacking policy limitations. All of those cases fall into either the category of the one-policy multi-automobile situation or else in the category of cases which follow the minority rule on the general stacking problem. For reasons already discussed, neither category applies here.

To summarize, Condition 8 violates public policy and is therefore unenforceable. The trial court correctly so ruled.

Affirmed.

All concur.