Loretta PALMISANO et al., Plaintiffs,

v.

## HORACE MANN MUTUAL INSURANCE COMPANY et al., Defendants,

and

Shari Lynn Lundy et al., Defendants on Counterclaim.

No. 77–0285–CV–W–4.

United States District Court,
W. D. Missouri, W. D.

March 13, 1978.

Edmond J. McElligott, Independence, Mo., James G. Lindquist, George T. O'Laughlin, Kansas City, Mo., for plaintiffs.

Thomas W. Wagstaff, Benjamin F. Mann, William J. Burrell, Kansas City, Mo., for defendants.

## OPINION AND ORDER

ELMO B. HUNTER, District Judge.

This matter now pends on defendant Horace Mann Mutual Insurance Company's Motion for Summary Judgment.

## I

## FACTS

Defendant Horace Mann Mutual Insurance Company and plaintiffs Loretta Palmisano, Kendra Dawn Metcalf, and Allanson Douglas Rawdon have agreed to the following facts:

On November 28, 1976, a 1965 Chevrolet Impala, driven by defendant Brandt Eric Kingsbury and occupied by plaintiffs Palmisano, .Metcalf, and Rawdon (and counterclaim defendant Shari Lynn Lundy) collided with an embankment near the intersection of Antioch and Barry Roads, Kansas City, Clay County, Missouri. All of the passengers were allegedly injured as a result of this collision.

The 1965 Chevrolet Impala involved in the collision was owned by a Mr. Phillip Kingsbury and defendant Brandt Eric Kingsbury had been given permission to drive the automobile on November 28, 1976.

Defendant Horace Mann Mutual Insurance Company issued a policy of insurance, number 14124920, to Phillip Kingsbury on August 20, 1976, covering the 1965 Impala, and this policy was in force on November 28, 1976. This policy provided $50,000 of liability coverage for each person and $100,000 total liability coverage for each occurrence. The policy also provided medical payment coverage of $2,000 per person.

Two additional policies of automobile insurance had been issued to Phillip Kingsbury and were also in effect on November 28, 1976. Policy number 13676730 provided coverage for Phillip Kingsbury's 1974 Buick Century and policy number 13676740 provided coverage for his 1970 Oldsmobile. Both of these policies were issued on October 21, 1976 and each policy provided for liability coverage of $50,000 per person and $100,000 per accident, along with medical payment coverage of $2,000 per person.

The issue presented by this suit is whether the liability and medical payment coverages in these three insurance policies may,

under Missouri law, be "stacked" so as to provided a total of $150,000/$300,000 liability coverage and $6,000 medical payments coverage. Defendant Horace Mann Mutual Insurance Company contends that "only the liability and medical payments coverages of policy no. 14124920 is available to plaintiffs." Plaintiffs Palmisano, Metcalf, and Rawdon, however, argue thus:

> "We contend that under Missouri law all three policies issued to Phillip C. Kingsbury provide coverage for defendant Brandt Eric Kingsbury and that the limits of liability and medical expense coverage of all three polices [sic] are available for all the injured plaintiffs based on the collision of November 28, 1976. Therefore, a correct interpretation of such policies under these facts and under the current state of Missouri law will result in this Court's declaring that a total of $300,000 of liability coverage (subject to a limit of $150,000 per person) and of $6,000 of medical payments coverage for each plaintiff is available."

All parties agree that Missouri law governs. *Erie Railroad Company v. Tomkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## II

## LIABILITY COVERAGE

The policy provisions of all three insurance policies issued to Mr. Phillip C. Kingsbury by defendant Horace Mann Mutual Insurance Company are identical. Part I of those policies, entitled "Liability Insuring Agreements," provides, *inter alia,* that defendant Horace Mann Mutual Insurance Company agrees to

> "pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of *bodily injury* sustained by other *persons* . . . arising out of the ownership, maintenance or use, including loading or unloading, of the *owned automobile* or any *non-owned automobile,* . . ."[1]

The question of contract interpretation thus becomes whether the 1965 Chevrolet Impala involved in the collision on November 28, 1976 constitutes an "owned" or "non-owned" automobile as those terms are defined by the provisions of Policies Nos. 13676730 and 13676740. Paragraphs 10–11 of Part I of the "Definitions" section of the policies provide:

> " 'Non-owned automobile' means an *automobile, trailer* or detachable living quarters unit, not
>
> (a) owned by,
>
> (b) registered in the name of, or
>
> (c) furnished or available for the frequent or regular use of the *named insured,* his spouse, or any *relative* of either residing in the same household, other than a *temporary substitute automobile.*
>
> " 'Owned automobile' means the *automobile* or *trailer* described in the declarations for which a specific premium charge indicates that coverage is afforded, and includes a *temporary substitute automobile, a newly acquired automobile,* and a *trailer* (as defined herein) or a detachable living quarters unit owned by the *named insured* or his spouse, if a *resident* of the same household."[2]

Defendant Horace Mann Mutual Insurance Company, after citing the above definitions and, in addition, the policy definitions of "newly acquired automobile" and "temporary substitute automobile," argues, in its Suggestions:

> "Clearly, the 1965 Chevrolet Impala does not qualify as a 'non-owned automobile' under the terms of Policies Nos. 13676730 and 13676740. Phillip C. Kingsbury owned the 1976 Chevrolet Impala, it was registered in his name and it was available for regular use by himself and members of his family.

> .     .     .     .     .

> "It is equally clear that the 1965 Chevrolet Impala does not qualify as an 'owned automobile' under policies nos. 13676730 or 13676740. It is not listed on the decla-

---

ration sheet of either policy as the automobile for which coverage is afforded and it is neither a 'temporary substitute automobile' nor a 'newly acquired automobile' as defined in the policy . . ."

Plaintiffs Palmisano, Metcalf, and Rawdon, in their Suggestions in Opposition, do not dispute defendant's arguments pertaining to contract interpretation; rather, plaintiffs argue that, despite this admitted contractual limitation, *public policy* mandates that the Courts permit stacking of liability coverage.

Plaintiffs principally rely upon *Cameron Mutual Insurance Company v. Madden*, 533 S.W.2d 538 (Mo. banc 1976) and *Galloway v. Farmers Insurance Company, Inc.*, 523 S.W.2d 339 (Mo.App.1975) to support their argument. The *Galloway* Court ruled that public policy, as derived from R.S.Mo. § 379.203,[3] compelled the conclusion that the plaintiff-insured "may 'stack' recovery under the uninsured motorist coverage of *two separate automobile policies* issued to him by the defendant." *Galloway*, at 340.[4] The Missouri Supreme Court, en banc, expressly approved the *Galloway* holding, *Madden*, at 542, and further held that the same result should be reached "when the insurance company elects to consolidate *in a single combination policy* coverages of two or more automobiles." *Madden*, at 542.[5]

Plaintiffs, relying on these cases, argue thus:

"The Court [in *Galloway*] ultimately decided that the policy condition limiting coverage to the insurance under the policy for the 1969 Chevrolet violated public policy as expressed in 379.203, R.S.Mo. 1969, V.A.M.S., and was, therefore, unenforceable. There is for this Court's pur-

pose no logical or legal distinction between the policy interpretation applicable to uninsured motorist coverage and that applicable to third-party liability coverage.

.     .     .     .     .

"Liability coverages are every bit as much a matter of statutory public policy as is uninsured motorist coverage."

With regard to plaintiffs' contention that there is "no logical or legal distinction between the policy interpretation applicable to uninsured motorist coverage and that applicable to third-party liability coverage," this Court must disagree. In *Madden, supra*, at 543, the Court, quoting from *Tucker v. Government Employees Insurance Company*, 288 So.2d 238 (Fla.1973), observed:

"We must not confuse uninsured motorist protection as inuring to a particular motor vehicle as in the case of automobile liability insurance. It is bodily injury insurance which protects against such injury inflicted by the negligence of any uninsured motorist."

The *Madden* Court further noted, at 547, quoting from *Government Employees Insurance Company v. Sweet*, 186 So.2d 95 (Fla.App.1966):

"The medical payments coverage applies to all medical expenses of the named insured while occupying or through being struck by an automobile, except an automobile owned by or furnished for the regular use of the named insured which is not described in the policy. This is the feature which makes medical payments insurance coverage an entirely different type of insurance than public liability or property damage insurance *where cover-*

---

**3.** R.S.Mo. § 379.203 provides, in pertinent part: "No automobile liability insurance . . . shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto in not less than the limits for bodily injury of death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of

bodily injury, sickness or disease, including death, resulting therefrom . . . .."

R.S.Mo. § 303.030 provides that liability insurance policies cover claims arising out of bodily injury or death in an amount of not less than $10,000 per person and $20,000 per accident.

**4.** Emphasis added.

**5.** Emphasis added.

*age is attributed to the vehicle causing the damage."* [6]

It is therefore clear that the Missouri Courts view uninsured motorist coverage as inuring to the person, whereas automobile liability insurance is considered as inuring to a particular motor vehicle. Consequently, plaintiffs' argument that there is "no logical or legal distinction between the policy interpretation applicable to uninsured motorist coverage and that applicable to third-party liability coverage" must, under Missouri law, fail.

With regard to plaintiffs' argument that "[l]iability coverages are every bit as much a matter of statutory public policy as is uninsured motorist coverage," reference to *Douthet v. State Farm Mutual Automobile Insurance Company*, 546 S.W.2d 156 (Mo. banc 1977) is helpful. At 158, the Court stated:

> "The dissenting opinion in *Cameron* referred to *Sterns v. M.F.A. Mutual Insurance Co.*, 401 S.W.2d 510, 517 (Mo.App. 1966), and argued that as therein stated the purpose of § 379.203 was to give the same protection to a person injured by an uninsured motorist as he would have had if the tort-feasor had been covered by the minimum coverage required by the Safety Responsibility Law. So construed, argued the dissenting opinion, the statute was satisfied if the policy provided minimum coverage to give the protection called for by the Safety Responsibility Law and, hence, it did not require stacking of coverage. If that reasoning had been adopted by this court, the result in *Cameron* necessarily would have been to uphold the limiting clause in the policy considered in that case. Instead, we held that the limiting clause did violate the public policy expressed in § 379.203 and, hence, was void.

> . . . . .

"It is true that in *Sterns v. M.F.A. Mut. Ins. Co.*, supra, at 527, decided before adoption of our uninsured motorist statute in 1967, and in *Webb v. State Farm Mut. Auto. Ins. Co.*, supra, [479 S.W.2d 148] at 151, the court of appeals stated by way of background that uninsured motorist coverage was designed to give the same protection to one injured by an uninsured motorist that he would have had if the tort-feasor had been covered by a standard automobile liability policy. *As already noted, we do not agree with that interpretation of § 379.203. . . ."* [7]

Clearly, therefore, the public policy supporting Missouri Uninsured Motorist Statute, R.S.Mo. § 379.203, is not identical to that supporting the Missouri Motor Vehicle Safety Responsibility Law, R.S.Mo. § 303.-010, *et seq.*

Because some additional public policy considerations apparently exist under the uninsured motorist law that do not exist under the Safety Responsibility Law, and because, as recognized by the Missouri Supreme Court, automobile liability insurance, unlike uninsured motorist coverage, inures to a particular motor vehicle, this Court is not now prepared to say that, given the unambiguous terms of the policies involved in this case,[8] the Missouri courts would permit stacking of the liability insurance coverage.

## III

### MEDICAL PAYMENTS COVERAGE

Because "no statute requires the inclusion of medical payment coverage in an automobile policy," this Court, in determining whether to stack the medical payments coverages provided in the three policies issued

---

6. Emphasis added.

7. Emphasis added.

8. Again, it should be emphasized that the two policies covering the Kingsbury vehicles that were not involved in the collision, provide liability insurance *only* for the "owned automobile," and certain "non-owned automobiles,"

"newly acquired automobiles," and "temporary substitute automobiles," as those terms are clearly defined in the policy. Plaintiffs do not refute defendant's position that, under the unambiguous terms of the policies themselves, liability coverage is not provided collisions such as the one with which the Court is here concerned.

to Mr. Kingsbury, is "concerned with interpreting and giving effect to provisions of the insurance contract, not public policy considerations." *Madden, supra,* at 545. The terms of the contract itself must, therefore, govern the resolution of this issue.

Part IV, Coverage C, Division 2 of the applicable insurance policy provides as follows:

"Division 2. To pay all reasonable *medical expenses* incurred for services furnished within one year from the date of accident to or for any other *person* who sustains *bodily injury,* caused by accident while *occupying*

1. the *owned automobile,* while being used by the *named insured,* by any *resident relative* of the same household or by any other person with the permission of the *named insured;*

2. a *non-owned automobile,* if the *bodily injury* results from

(a) its operation or occupancy by the *named insured* or its operation on his behalf by his private chauffeur or domestic servant, or

(b) its operation or occupancy by a *resident relative,* provided it is a *private passenger automobile* or *trailer,*

but only if such operator or occupant has, or reasonably believes he has, the permission of the owner to use the *automobile* and the use is within the scope of such permission." [9]

As all the definitions applicable to that portion of the relevant policies are made expressly applicable to the medical payments coverage portion of those policies, it is clear that the 1965 Impala involved in the collision is neither an "owned" nor a "non-owned" automobile under the medical payments provisions of policies nos. 13676730 or 13676740. Consequently, neither policy's medical payments coverage applies to the collision on November 28, 1976. Plaintiffs, in their Suggestions in Opposition, make no serious contention to the contrary.

IV

CONCLUSION

For the above and foregoing reasons, it is hereby

ORDERED that defendant Horace Mann Mutual Insurance Company's Motion for Summary Judgment on Count I of plaintiffs' First Amended Complaint be, and it is hereby, granted.

---

9. Emphasis in the original.