**Rudolph LINDERER,
Plaintiff-Respondent,**

v.

**ROYAL GLOBE INSURANCE COMPANY, Defendant-Appellant,**

**and**

**Millers Mutual Insurance Association of Illinois, Defendant-Appellant.**

**Nos. 39866, 39880.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 5, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1980.

Applications to Transfer Denied
May 13, 1980.

Ben Ely, Jr., Kortenhof & Ely, St. Louis, Ben Ely, Ely & Cary, Hannibal, for defendant-appellant, Royal Globe Ins. Co.

Emmett M. O'Brien, Willson, Cunningham & McClellan, St. Louis, for defendant-appellant, Millers Mut. Ins. Co. of Illinois.

Robert J. Robinson, Pannell, Dodson & Robinson, Festus, for plaintiff-respondent, Rudolph Linderer.

SNYDER, Presiding Judge.

Plaintiff Rudolph Linderer sued defendants, Royal Globe Insurance Company and Millers Mutual Insurance Association of Illinois, for recovery under policies insuring him against damages caused by a collision with an uninsured motorist. At the time of the accident on June 1, 1975, Linderer was an employee of the Union Electric Company and was driving a vehicle owned by Union Electric. Royal Globe was the insurer of Union Electric's fleet of 1,420 motor vehicles. The policy included uninsured motorist coverage on each of the fleet vehicles in the amounts of $10,000 per person and $20,000 per accident, the minimum amounts required by statute. § 379.203, RSMo 1969, as amended.[1] Union Electric was the named insured of this policy, but coverage was provided for those occupying the vehicles. Union Electric paid a premium of $5 per vehicle for the uninsured motorist coverage furnished by Royal Globe.

Linderer was the named insured in a Millers Mutual automobile liability policy which insured two automobiles owned by Linderer. The policy provided for uninsured motorist coverage for each automobile and specified a single limit of $20,000 for each accident. Separate premiums were charged for each vehicle.

Each appellant filed a separate motion to reduce the prayer of the petition. The motions were based on policy provisions limiting recoveries under the uninsured motorist clauses to $20,000 for Millers Mutual and $10,000 for Royal Globe. The motions were denied.

The case was tried to a jury which returned a single verdict against both defendants in the amount of $200,000. The trial court apportioned the damages by awarding $160,000 against Royal Globe and $40,000 against Millers Mutual. The trial court thus permitted "stacking" of the coverages in both policies. That is, the court allowed the individual coverages for all the automobiles insured under a policy to be used to pay for damages for personal injuries incurred in a collision between a single insured automobile and another driven by an uninsured motorist. Both insurers appealed from that judgment. Millers Mutual's motion to consolidate the appeals was granted.

Royal Globe's appeal will be considered first. Part twelve of the Royal Globe policy describes the persons insured by the uninsured motorist portion:

"I. COVERAGE U–UNINSURED MOTORISTS

(Damages for Bodily Injury)

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle;

. . .

II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) The named insured and any designated insured and while residents of the same household, the spouse and relatives of either;

(b) Any other person while occupying an insured highway vehicle; and

(c) Any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

1. All statutory references are to RSMo 1969 as amended.

The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability.

### III. LIMITS OF LIABILITY

Regardless of the number of (1) persons or organizations who are insureds under this policy, (2) persons who sustain bodily injury, (3) claims made or suits brought on account of bodily injury, or (4) highway vehicles to which this policy applies;

(a) The limit of liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by 1 person as the result of any one accident. . . ."

Royal Globe asserts it was error for the trial court to permit stacking and to refuse to give effect to the limiting clause of the policy. In support of this contention Royal Globe urges that stacking should be required only for a person who is a named insured under a policy, and not for one who is insured merely by reason of his occupancy of an insured vehicle.

The Missouri courts have not addressed the issue of stacking of uninsured motorist coverage for an occupancy insured under a fleet policy such as the one held by Union Electric. They have, however, dealt with the issue of stacking by named insureds. The decisions concerning stacking have been based on Missouri's uninsured motorist statute, § 379.203.[2] See: Hart, Stacking of Motor Vehicle Insurance Coverage in Missouri 2x (The Deep Pocket) (pts. 1–2), 35 Mo.Bar J. No. 3, page 173, No. 4, page 245 (1979).

In *Steinhaeufel v. Reliance Insurance Companies*, 495 S.W.2d 463 (Mo.App.1973), the court was confronted with the issue of the validity of an excess insurance clause which provided that the insurer would be liable only for the excess amount it insured over other insurance primarily available. The plaintiff was injured by an uninsured motorist while driving his employer's automobile. He suffered damages in the amount of $15,000. The employer's insurer paid $10,000, the limit of its policy, but plaintiff's insurer refused to pay the balance, relying on the excess insurance clause in its policy which also was limited to $10,000. The trial court ruled in favor of plaintiff's insurer. The court of appeals reversed, holding that the excess clause was against the public policy expressed in § 379.203 which mandates the inclusion of uninsured motorist coverage in all liability policies. This allowed the insured to claim both on his employer's insurance on the vehicle he was driving at the time of the accident and on his personal coverage up to the amount of his total damages. This decision did not permit stacking as the term is used. There were two separate insureds and two separate policies. The court simply voided the excess insurance clause because to give effect to the excess clause would have taken away the uninsured motorist coverage required by statute.

Stacking was not permitted in *Automobile Club Inter-Insur. Exch. v. Diebold*, 511 S.W.2d 135 (Mo.App.1974). Diebold was injured by an uninsured motorist when driving a vehicle not owned by him. His single policy insured two automobiles owned by Diebold who paid a separate premium for uninsured motorist coverage on each. The policy contained a clause limiting the insurer's liability for one accident to the coverage on one vehicle. The court of appeals held the minimum uninsured motorist coverage requirement of the statute applied only to each policy, and, as the insured held only one policy, the insurer could limit its coverage.

**2.** Section 379.203 provides in pertinent part:
"1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered . . . unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom . . . ."

Stacking was permitted, however, where two automobiles owned by the same insured were covered by separate policies issued by the same insurer, despite a clause in each policy limiting the insured's liability to the amount of coverage in one policy. *Galloway v. Farmers Insurance Company, Inc.,* 523 S.W.2d 339 (Mo.App.1975). *Galloway* rejected the philosophy that the purpose of Missouri's uninsured motorist statute was to provide the same coverage as if the uninsured motorist had carried the minimum liability insurance. Rather, the court held the statute required each policy to include the minimum amount of coverage which could not be limited by private contract.

The Missouri Supreme Court later gave its sanction to stacking in single policy situations in *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976). The facts in *Cameron Mut.* were almost identical with those in *Diebold, supra.* The plaintiff owned two motor vehicles which were listed separately in a single policy. Uninsured motorist coverage in the minimum statutory amount was listed for each vehicle and a separate premium charged. The policy included a limitation clause. Defendant's wife died as a result of injuries she received in a collision with an uninsured motorist. The trial court ruled the two coverages could not be stacked and that the insurer was not liable for any amount in excess of $10,000 for the uninsured motorist coverage. The Missouri Court of Appeals, Western District, reversed, held that stacking was mandatory, and the cause was taken on transfer by the Missouri Supreme Court because the Western District decision was in conflict with *Diebold* which had been decided by the Missouri Court of Appeals, Eastern District.

The Missouri Supreme Court in *Cameron Mut.* relied heavily on two foreign cases, *Tucker v. Government Employees Insurance Co.,* 288 So.2d 238 (Fla.1973) and *Great Central Insurance Company v. Edge,* 292 Ala. 613, 298 So.2d 607 (1974).

The *Tucker* case in Florida involved a statute similar to Missouri's and a single policy issued to the claimant covering two automobiles on which separate premiums were charged for uninsured motorist coverage of $10,000 per person, $20,000 per accident. The insured's daughter, while a passenger in one of the insured automobiles, was injured through the negligence of an uninsured motorist. The plaintiff was permitted to stack the two uninsured motorist coverages.

The facts in the *Edge* case were similar except that the named insured was injured by an uninsured motorist while a pedestrian. The Alabama Supreme Court in *Edge* permitted stacking of the uninsured motorist coverages of $10,000 each person and $20,000 each accident on the two vehicles in spite of a clause limiting liability, and allowed a recovery of $20,000, an amount less than the plaintiff's damages.

The courts in *Tucker, supra, Edge, supra,* and the Missouri Supreme Court in *Cameron Mut., supra,* based their decisions to require stacking upon two major premises. First, the public policy as expressed in the statute which requires the minimum uninsured motorist coverage on each vehicle mandates that the required coverage may not be limited by the insurer in a policy clause. Second, because the insured paid a premium for coverage on the second vehicle the insurer cannot take away that coverage by a limiting clause in the policy precluding recovery based on all premiums paid. The court in *Tucker, supra,* also pointed out that the uninsured motorist protection does not inure to a particular vehicle as does automobile liability insurance; but is bodily injury insurance against injury caused by an uninsured motorist inuring to the insured individual.

Emphasizing the reasoning in *Tucker, supra,* and *Edge, supra,* the Missouri Supreme Court expressly overruled *Diebold, supra,* and held the public policy as expressed in § 379.203 prohibits an insurer from limiting an insured to only one of multiple uninsured motorist coverages included in a single policy. The court said the form of the coverage, that is, whether two automobiles are listed separately and insured in one policy, as in *Diebold, supra,* or insured in

two separate policies, as in *Galloway, supra,* should not be a basis for allowing an insurer to escape liability.

Respondent Linderer urges that *Cameron Mut., supra,* is controlling and therefore the trial court's decision must be affirmed. Royal Globe contends that the *Cameron Mut.* decision, because the case dealt only with a named insured, does not extend to the present situation and cites later decisions in Florida and Alabama which distinguish between named insureds and occupancy insureds. The later cases ruled that the stacking requirement should not be extended to uninsured motorist coverage of fleets of commercial vehicles similar to the coverage under review.

In *Travelers Ins. Co. v. Pac,* 337 So.2d 397 (Fla.App.1976) an employee of an oil company was injured by an uninsured motorist while operating his employer's vehicle. At the time of the accident the oil company was one of the named insureds under a fleet automobile liability insurance policy which provided uninsured motorist coverage for the motor vehicle involved in the accident and for 14 additional vehicles, all of which were specifically identified in the policy and for which a separate premium was paid. The policy defined "insured" in essentially the same manner as the Royal Globe policy. The issue was whether stacking should be permitted for the injured party who was an insured only by virtue of his occupancy of an insured vehicle. The trial court ruled that stacking was required.

The Florida District Court of Appeals in *Pac* referred to *Tucker, supra,* but drew a distinction between the "named insured" as in *Tucker* and a person who is covered merely because of his occupancy of an insured vehicle. The court said there was no reason to apply the result in *Tucker* to a guest or employee injured in an insured vehicle. It held that stacking should not be permitted and said further concerning the logic of cases which made a distinction between the "named insured" and an "occupancy insured" at page 399:

"The logic of these cases is especially compelling where the named insured is a large commercial venture. Here, 15 vehicles were involved, while in *Cunningham, supra,* the insured sought to stack coverage on over 4,000 vehicles. We can easily envision a situation in which stacking of coverage for an occupant would give the insurance company in return for a minimal premium a potential liability running into millions of dollars, and we do not think *Tucker* was ever intended to lead to that result."

The *Cunningham* case referred to in the quote is *Cunningham v. Insurance Company of North America,* 213 Va. 72, 189 S.E.2d 832 (1972). There the Supreme Court of Virginia refused to permit stacking of the uninsured motorist coverage on 4,368 state owned vehicles contained in a single liability policy issued to the Commonwealth of Virginia. The court, however, required the stacking of the uninsured motorist coverage on three vehicles contained in a policy issued to Cunningham individually.

Alabama made a similar distinction from *Great Central Insurance Company v. Edge, supra,* in the case of *Lambert v. Liberty Mutual Insurance Company,* 331 So.2d 260 (Ala.1976). In *Lambert* the trial court held that an employee of Seaboard Coastline Railroad and an "insured" under the uninsured motorist coverage provided by Seaboard's fleet insurance policy with Liberty Mutual could not stack Seaboard's coverages on any other vehicles with the coverage on the vehicle in which the employee was riding at the time of the accident.

Lambert, the employee, was also the "named insured" in a policy of insurance issued to him personally which provided uninsured motorist coverage on two vehicles owned by Lambert with limits of $20,000. There was no dispute about this policy.

The Alabama Supreme Court affirmed and distinguished *Great Central Insurance Company v. Edge, supra,* by classifying insureds as "named insureds," i. e. Seaboard, and "second class insureds" or "occupancy insureds," i. e. Lambert, the employee. The court said that for a named insured stacking was permissible and required but for the second class of insureds or occupancy

insureds, stacking would not be mandatory and effect would be given to the limiting clause of the policy.

The court in *Lambert, supra*, also cited *Cunningham v. Insurance Company of North America, supra*, and said at page 264[4]: "We agree with the Virginia Supreme Court that the rationale upon which stacking under multi-vehicle policies has been justified for insureds of the first class is inapplicable to insureds of the second class."

The *Lambert* court also based its decision on the reasoning that the insured is entitled only to that protection which he may reasonably expect from the terms of the policy he purchases. It quoted at page 263 Professor Keeton's analysis that the principle of reasonable expectations insures that " '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.' R. Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971)."

The court then reasoned that an individual would reasonably expect the insurer to honor his uninsured motorist coverage on every personally owned vehicle regardless of a limiting clause in the policy. It then said: "However, what may be a reasonable expectation for the purchaser and 'named insured' under a policy may not necessarily be so for an insured such as Lambert who has become an insured by virtue of his riding as a passenger in an insured vehicle." *Lambert v. Liberty Mutual Insurance Company*, 331 So.2d 260, 264 (Ala.1976).

The reasoning of the later Florida and Alabama cases and the *Cunningham, supra*, decision is sound and it applies here.

Respondent Linderer did not pay the premium for the coverage he seeks to enforce as did the claimant Madden in *Cameron Mut., supra*. He is not a named insured in the Union Electric policy as was Madden in *Cameron Mut.* Linderer's eligibility for payment under the policy arises solely out of his occupancy of one of the insured automobiles. He is different in these respects from the claimants in *Galloway, Diebold, Tucker, Edge* and *Cameron Mut., supra*.

It is obvious that an individual who applies for and receives a liability policy covering his two automobiles would expect to collect the coverage he paid for on both automobiles if anything happened to him or a member of his family. On the contrary, it is not credible that a company or an employee of a company having a fleet of 1,420 vehicles would reasonably expect the coverage on the vehicle the employee happened to be occupying at the time of the collision with an uninsured motorist to be $14,200,-000, as it would be if stacking were to be permitted here.

Therein lies the problem. If stacking were required for fleet policies there would be $14,200,000 of coverage for each Union Electric vehicle and the total exposure for the entire fleet of 1,420 vehicles would be 1,420 times $14,200,000 or $20,164,000,000, obviously an argument to absurdity, but the actual exposure amounts to millions of dollars. This cannot have been the intention of the Missouri Supreme Court when the opinion in *Cameron Mut., supra*, was rendered. Further, if *Cameron Mut.* were to be followed for owners of large fleets of motor vehicles, there is no possible way the fleet owner could limit his uninsured motorist coverage to the statutory minimum, or if the fleet is large, to less than millions of dollars for each individual vehicle. Such a result would be unconscionable.

There is also a flaw in the reasoning that holds denial of stacking privileges permits collecting a premium from the insured and then taking away the purchased coverage. This does not happen. The premium for the individual vehicle covers at all times the occupant of that vehicle. It cannot be taken away by a limiting clause. When stacking is denied the prohibition is against shifting the coverage on one vehicle to another. The coverage on the vehicle not involved in an accident remains in force. Therefore, the insured continues to get what he has paid for.

With the possible exception of one State of Washington case, *American States Ins. Co. v. Milton*, 89 Wash.2d 501, 573 P.2d 367 (banc 1978), in which the issue was not directly addressed, no cases have been cited nor have any been found in which courts in other jurisdictions have required stacking of uninsured motorist coverage in fleet policies. Rather, the courts have unanimously denied stacking. *Lambert, supra*; *Ohio Casualty Ins. Co. v. Stanfield*, 581 S.W.2d 555 (Ky.1979); *Cunningham, supra*; *Pac, supra*.

Although the later Florida and Alabama decisions are not binding on Missouri, in this case they are extremely persuasive because of the reliance placed by the Missouri Supreme Court on the two earlier cases from those states. The fact that both the earlier cases have since been distinguished in the respective states, and stacking of fleet coverage allowed to be limited in the later cases, gives strong support to a similar finding in the case under review. It is in fact the only finding which is commensurate with the practicalities of the insurance industry in the business world. The trial court judgment against Royal Globe should have been $10,000.

The question presented by the Millers Mutual appeal is different. Millers Mutual argues the trial court erred in stacking the coverage on the two automobiles in its policy, but further argues that stacking should be permitted against Royal Globe, and Millers Mutual should not be liable because it only provided excess coverage; or at most it should be liable only for Millers Mutual's proportionate amount of the total insurance available to Linderer.

The arguments concerning Royal Globe have been disposed of earlier in the opinion.

The policy issued by Millers Mutual provided that the $20,000 limit for each accident would be the total liability of the company for any single accident. The policy further provided:

> "Other Insurance: . . . With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under

the uninsured motorist coverage shall apply only as excess insurance over any other similar insurance available to such insured. . . ."

But *Cameron Mut., supra*, directly controls the Millers Mutual situation and stacking is plainly required for that policy in spite of the limitation and excess insurance clauses of the policy. The Millers Mutual liability is $40,000.

Therefore, the trial court judgment as to appellant Millers Mutual is affirmed in the amount of $40,000. The judgment as to Royal Globe is reversed and remanded with instructions to enter a judgment against Royal Globe in the amount of $10,000.

SMITH, J., concurs.

PUDLOWSKI, J., concurs in part and dissents in part.

PUDLOWSKI, Judge, dissenting.

I concur in part and respectfully dissent in part. I concur in the majority decision in affirming the trial court's judgment against appellant, Millers Mutual. I respectfully dissent in the decision of the majority in reversing the trial court's judgment relating to appellant, Royal Globe. I would affirm the trial court's judgment.

I am compelled to follow *Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538 (Mo. banc 1976). The Supreme Court stated that: "[W]e hold that the public policy expressed in § 379.203 prohibits the insurer from limiting an insured to only one of the uninsured motorist coverages provided by a policy . . . ." Id. at 544–45.

The reliance of the majority upon the foreign cases, *Lambert v. Liberty Mut. Ins. Co.*, 331 So.2d 260, (Ala.1976) and *Travelers Ins. Co. v. Pac*, 337 So.2d 397 (Fla.App.1976) is misplaced.

Both cases attempt to distinguish the coverages under the uninsured motorist provision in one policy by defining the separate classes of insureds. *Travelers* differentiates the "named insured" from "any other person while occupying an insured vehicle." *Lambert* also develops a similar distinction

and concludes: "[H]ere, we are dealing with a *limitation* as to the amount of coverage to be afforded a passenger who is conceded by both sides to be an 'insured' under the omnibus clause of the uninsured motorist coverage. It [referring to another Alabama decision] was 'coverage' there and 'stacking' here." 331 So.2d at 265 (emphasis added).

Our statute, § 379.203, RSMo 1978, does not provide either the distinction of classes nor the limitations. For this court to do otherwise is to legislate. If the legislature intended to classify and define "insured," it surely would have. And to *limit* the uninsured would be contrary to the dictates of *Cameron.*

Therefore, I am constrained to follow the strict construction of the statute and *Cameron.* I would affirm the trial court's judgment.