Kert SEYMOUR, Plaintiff/Appellant,

v.

The LAKEWOOD HILLS ASSOCIATION, Defendant/Respondent,

and

Ohio Casualty Insurance Company, Defendant/Respondent.

No. 68983.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 11, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 1996.

Application to Transfer Denied
Sept. 17, 1996.

---

Joseph A. Frank, St. Louis, for appellant.

Gael Davis Wood, Washington, for respondent Lakewood Hills Ass'n.

Thomas Joseph Plunkert, Kathleen M. Blair, St. Louis, for respondent Ohio Cas. Ins. Co.

RHODES RUSSELL, Judge.

Plaintiff Kert Seymour was injured when the garbage truck on which he was riding struck a tree. Seymour brought suit against Ohio Casualty Insurance Company ("Ohio Casualty") for uninsured motorist coverage on an insurance policy it issued on the truck and against Lakewood Hills Association ("Lakewood Hills") for negligence on a premises liability theory. The trial court granted motions by both defendants for summary judgment on plaintiff's claims. It is from these judgments which plaintiff now appeals. We affirm.

■ The standard of review for the granting of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom judgment was entered. *Id.* Viewed in the light most favorable to Seymour, the facts disclosed in the record are as follows:

This litigation arose out of a one vehicle accident involving a garbage truck owned by Reliable Disposal, Inc. ("Reliable"), Seymour's employer. Ohio Casualty issued to Reliable a policy of insurance on the truck for the period of June 16, 1990 to June 16, 1991. The accident occurred on November 21, 1990 when Seymour's co-employee, Tom Marchbanks, was driving the garbage truck and Seymour was standing on the back of the truck. Marchbanks, while attempting to back down a street to collect trash in a cul-de-sac in the Lakewood Hills Subdivision, backed the truck into a tree located in the middle of the road, severing Seymour's left hand. The road was owned and maintained by Lakewood Hills.

Seymour filed suit against Marchbanks and Lakewood Hills. Marchbanks turned his defense over to Ohio Casualty who, based on a fellow employee exclusion in the policy, sought and was granted a declaratory judgment finding that Ohio Casualty had no obligation to defend or pay any judgment against Marchbanks arising from the accident. Seymour thereafter filed a second amended petition seeking to recover from Ohio Casualty under the policy's uninsured motorist coverage. Seymour retained his claim against Lakewood Hills for negligent failure to warn of, or protect from, the alleged dangerous condition presented by the tree in the road. Both defendants filed motions for summary judgment. The trial court sustained Ohio Casualty's motion, determining that the truck was not an uninsured motor vehicle as defined in Ohio Casualty's policy. The trial court also granted summary judgment to Lakewood Hills who had argued the tree was an open and obvious condition so that there was no duty to warn or protect. Seymour now appeals.

■ Point one involves the propriety of summary judgment in favor of Ohio Casualty. Summary judgment is properly entered when the moving party has demonstrated through the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Nieberg v. Marshall*, 865 S.W.2d 409, 410 (Mo.App.1993); Rule 74.04. If the facts alleged to be in dispute are actually differing opinions of the parties concerning the legal effect of documents or actions determining their legal rights, summary judgment is not precluded. *State ex rel. Menkhus v. City of Pevely*, 865 S.W.2d 871, 873 (Mo.App.1993).

■ Seymour contends that there was a genuine issue as to the material fact whether the trash truck was an uninsured motor vehicle under the definitions in Ohio Casualty's policy with Reliable. While disputed, the legal effect of the policy is an issue of law rather than fact. *Id.* It is, however, relevant to determining whether Ohio Casualty is entitled to judgment as a matter of law and therefore whether summary judgment is proper. We will consider the ruling on that basis.

■ In any given case, whether or not uninsured motor vehicle insurance is applicable, in the first instance, is a matter of construction of the insurance contract. *Viessman v. Allstate Ins. Co.*, 825 S.W.2d

349, 351 (Mo.App.1992). Seymour claims that Ohio Casualty's policy provisions establish that the truck was an uninsured motor vehicle.[1] The policy defines "uninsured motor vehicle" as a land motor vehicle or trailer:

> a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged; ...
>
> c. For which an insuring or bonding company denies coverage or becomes insolvent.

Seymour's position is that he is entitled to uninsured motorist benefits under the policy because Ohio Casualty denied coverage under the liability portion of the policy based on the exclusion for any fellow employee injured in the course of employment. Seymour argues that following the plain language of the policy, this denial places the truck within the policy definition of an "uninsured motor vehicle." However, this assertion is not justified by the language of the policy read in light of § 379.203 RSMo 1994,[2] which requires liability policies to include coverage for insureds who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. Both the policy and statutory definitions of "uninsured motor vehicle" refer to a vehicle for which coverage is lacking, not an individual operator. In determining what constitutes an uninsured motor vehicle, the focus is on the vehicle and not whether the driver is uninsured under the circumstances of any particular accident. *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 143 (Mo. banc 1980). An uninsured motor vehicle is one which is not insured. *Rister v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 132, 134 (Mo.App.1984). When language is plain, straightforward, and susceptible of only one meaning there is no room for judicial construction because there is nothing to construe. *Id.* As Ohio Casualty points out, the garbage truck was at all times insured by a liability policy. Accordingly, the truck was an insured vehicle. This is true even though Seymour's status as a fellow employee of Marchbanks prevents his recovery under the policy.

■ This result is consistent with the purpose of § 379.203, which is to extend uninsured motorist coverage to the same extent as would have been available if the tortfeasor had complied with the minimum requirements of the Motor Vehicle Financial Responsibility Law ("MVFRL").[3] *Harrison,* 607 S.W.2d at 144. In the case before us, Reliable did have a liability policy covering the truck which complied with the MVFRL.

■ In addition, § 303.190.5 expressly provides that uninsured motorist coverage need not extend to "any liability on account of bodily injury or death of an employee of the insured while engaged in the employment, other than domestic, of the insured." The fellow employee exclusion in Ohio Casualty's policy, therefore, did not violate the MVFRL or § 379.203. Contracting parties may provide for the insurance policy coverage they desire so long as the provisions do not violate public policy. *Miles v. State Farm Mut. Auto. Ins. Co.*, 519 S.W.2d 378, 379 (Mo.App.1975). As noted by the court in *Zink v. Allis*, 650 S.W.2d 320, 323 (Mo.App. 1983), if we were to hold that Seymour should fall within uninsured motorist coverage, the effect would be to nullify the fellow employee exclusion from liability coverage, giving the insured protection he did not bargain for.

■ Furthermore, the accident in this case involved only the insured vehicle. Section 379.203 is designed to require coverage only against injuries arising from collisions

---

1. Ohio Casualty does not dispute that Seymour was an "insured" under the definitions of the policy. Therefore, the only issue as to coverage under the policy is whether the truck was an "uninsured motor vehicle."

2. All statutory references hereinafter cited are to RSMo 1994 unless otherwise indicated.

Section 379.203.2 provides:

For the purposes of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified herein because of insolvency.

3. §§ 303.010—303.370 RSMo.

with *other vehicles* lacking liability coverage. *Miles,* 519 S.W.2d at 379 (emphasis original). In *Harrison v. MFA Mut. Ins. Co., supra,* the Missouri Supreme Court, faced with a one vehicle accident, cited this reasoning in *Miles* with approval. Seymour distinguishes *Harrison* and relies on *Viessman v. Allstate Ins. Co., supra,* for the proposition that denial of coverage due to an exclusion places the vehicle within the definition of "uninsured motor vehicle."

The courts in *Harrison* and *Viessman* faced very similar facts. In *Harrison,* a man was driving a car in which his wife and daughter were passengers. The car turned over, killing the husband and injuring the wife and daughter. In *Viessman,* a woman was injured in a one vehicle accident while a passenger in a car driven by her husband. Both insurance companies denied liability on the claims under the husbands' policies based on the household member exclusion from liability coverage in the policies. The wives in both cases then went on to seek recovery under the uninsured motorist provisions of the policies. The *Viessman* court, however, distinguished *Harrison* based on the express exclusion in the *Harrison* policy definition of "uninsured motor vehicle" for the insured vehicle itself. Therefore, in *Harrison,* denial of coverage could not make the vehicle an uninsured motor vehicle since it was expressly excluded from coverage. Such an exclusion was not present in the policy in *Viessman,* and the court concluded that in such a case the clause including vehicles for which an insurer denies coverage within the definition of "uninsured motor vehicle" is determinative. The court held that the insurance company's denial of coverage under the household member exclusion rendered the vehicle an uninsured motor vehicle under the terms of the policy.

Seymour maintains that because the Ohio Casualty policy, too, did not contain a specific exclusion for the garbage truck, following the reasoning of *Viessman,* the denial of coverage based on the fellow employee exclusion makes the truck an uninsured motor vehicle. While persuasive in the household exclusion situation where recovery outside the policy is futile since it must inevitably come to the injured party from the resources of his own household, this result loses its appeal in the context of a fellow employee exclusion. The purpose underlying this exclusion has been stated or recognized to be that of distinguishing the employer's liability to his employees from that of his liability to the general public, thereby relieving the employer of the onerous requirement of insuring his employees under his public liability insurance policy, such employees being already protected by the worker's compensation statutes. *Zink,* 650 S.W.2d at 324. As we noted above, the logical result of holding that uninsured motorist benefits are applicable to Seymour would be to abrogate the fellow employee exclusion from the liability coverage of the policy. This would place a double burden on the employer and provide a double benefit to plaintiffs like Seymour. Such could not have been the intent of the legislature in enacting § 379.203, as § 303.190.5 expressly approves the fellow employee exclusion in liability policies.

Although the uninsured motorist provision of the policy here, as in *Viessman,* did not include a specific exclusion for the vehicle involved, that omission cannot justify interpretation of the denial of coverage clause so as to invalidate the agreement of the parties that fellow employees injured on the job are not covered by the policy. Requiring uninsured motorist coverage in the household exclusion context may provide the only recovery possible for a party injured by the tortious act of a family member. In the fellow employee exclusion situation, however, uninsured motorist benefits would merely provide double benefits and burdens.

Seymour also relies on *Martin v. State Farm Mut. Auto. Ins. Co.,* 755 S.W.2d 638 (Mo.App.1988) to support his position. However, the court in *Martin* found the exclusion of government-owned vehicles from the policy definition of "uninsured motor vehicle" void as against public policy. In the case at bar, there is no contention that Ohio Casualty's policy provisions are in any way contrary to public policy. Further, in *Martin,* on the grounds that it was a government-owned vehicle, the insurance company denied coverage of the vehicle itself. Here, Ohio Casualty has recognized liability for the truck, denying coverage only to Seymour based on his status as Marchbanks' fellow employee.

Focusing on the vehicle as required by *Harrison* and the policy language, we find that Ohio Casualty did not deny coverage for the garbage truck. The truck, therefore, was not an uninsured motor vehicle as defined in Ohio Casualty's policy with Reliable. The trial court did not err in granting Ohio Casualty's motion for summary judgment. Point one is denied.

▮ In the second point on appeal, Seymour challenges the grant of summary judgment to Lakewood Hills. Seymour argues that issues of material fact are disputed as to whether the tree was open and obvious, precluding liability, and if so, whether Lakewood Hills should have anticipated the harm despite the obviousness. As with point one, while these issues are not fact questions, we will review them as relevant questions of law.

▮ Our Supreme Court, in *Harris v. Niehaus*, 857 S.W.2d 222 (Mo. banc 1993), adopted as Missouri law Restatement (Second) of Torts §§ 343 and 343A(1) (1965), which embody the standard of care a landowner owes to an invitee. Under *Harris*, if a condition on the property is so open and obvious that an invitee should reasonably be expected to discover it and realize the danger, a possessor of land does not breach the standard of care owed to invitees unless the possessor should anticipate the harm despite such knowledge or obviousness. *Id.* at 226. A possessor of land is not an absolute insurer of the well-being of its invitees. *Id.* Failure, therefore, to protect invitees against conditions that are open and obvious as a matter of law does not fall below the applicable standard of care. *Id.*

Lakewood Hills contends the tree in the center of the road was so open and obvious that a person should reasonably be expected to see it and recognize the danger posed. Both Marchbanks and Seymour stated in depositions that they knew the tree was there. Seymour stated that he had seen it many times when collecting trash. Marchbanks stated that looking down the street you could see the tree from the end of the road. The tree being clearly visible from the end of the street, common sense dictates that a reasonable person would have appreciated the harm likely to occur should a vehicle strike the tree. We find, as a matter of law, that the dangerous condition presented by the tree was open and obvious.

Seymour maintains that the correct law is the rule, set out in *Cox v. J.C. Penney Co.*, 741 S.W.2d 28 (Mo. banc 1987), that the openness and obviousness of the danger should not determine the landowner's duty, but rather should simply be a factor for the jury to consider in determining comparative fault. The more recent case of *Harris*, however, specifically rejected this argument. The Missouri Supreme Court declared that "a more crisp analysis in *Cox*" would have recognized that whether a duty exists at all must necessarily be determined before one even reaches the issue of comparative fault. *Harris*, 857 S.W.2d at 227.

> *Cox* did not intend to abrogate the open and obviousness of a condition as a consideration for the court in determining a possessor of land's standard of care. Quite simply, where the danger is open and obvious as a matter of law and the risk of harm exists only if the plaintiff fails to exercise due care, the case is not submissible to the jury—and the dilemma resolved in *Cox* is never reached.

*Id.*

Seymour next claims that, despite the obviousness of the tree, Lakewood Hills should have anticipated the harm to Seymour. This court recently faced a similar argument in *Hellmann v. Droege's Super Market, Inc.*, No. 68737, slip opinion (Mo.App.E.D., May 21, 1996); (a motion for rehearing was sustained by the Court En Banc and the matter was reheard on October 15, 1996. A new opinion will be issued). In *Hellmann*, plaintiff fell when she slipped on ice in a grocery store parking lot. As in *Hellmann*, Seymour relies on *Privitera v. Coastal Mart, Inc.*, 908 S.W.2d 779 (Mo.App.1995). The plaintiff in *Privitera* fell when she caught her heel in a small marble-sized hole in the defendant's parking lot. In *Privitera*, the court held that even if the condition of the concrete was open and obvious, the defendant should have anticipated the harm. The *Hellmann* court dis-

tinguished *Privitera*, reasoning that with snow and ice, a common experience in the area, a reasonable person could be expected to protect herself from the obvious danger. While in *Privitera* it was unclear whether the plaintiff noticed the holes in the concrete lot, in *Hellmann*, the plaintiff admitted she had noticed the ice when she parked her car on the ice-covered portion of the lot.

The case at bar is very similar to *Hellman*. Both Seymour and Marchbanks stated they were aware of the tree, and trees are sufficiently common that a reasonable person could be expected to recognize the danger of striking a tree with a vehicle. The evidence and logic support Lakewood Hills' reasonable reliance on its invitees to employ the simple means available to prevent this harm from occurring. The failure of Lakewood Hills to protect Seymour against such a condition does not fall below the standard of care applicable in this case. The trial court did not err in granting summary judgment to Lakewood Hills. Point two is denied.

Judgment is affirmed.

GERALD M. SMITH, P.J., and GARY M. GAERTNER, J., concur.