Kenneth H. KRAMER, Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA and LaFarge Corporation, Respondents.

No. WD 58760.

Missouri Court of Appeals, Western District.

June 29, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2001.

Application for Transfer Denied Oct. 23, 2001.

Stephen Nichols, Kansas City, for Appellant.

Robert Kroenert, Kansas City, for Respondent.

HOLLIGER, Judge.

Appellant Kenneth H. Kramer ("Kramer") brought a suit against his employer, LaFarge Corporation ("LaFarge") and its insurer, Insurance Company of North America ("INA") seeking recovery of damages from an accident involving an uninsured motor vehicle. The trial court granted summary judgment in favor of INA and LaFarge on the basis of provisions in INA's policy excluding claims by an employee of the insured and a clause requiring corroboration evidence in an uninsured motorist claim where there was no contact with the uninsured vehicle. We find that application of the employee exclusion clause where the injury does not arise from the negligence of the employer or another employee is not authorized by law. We further find that the policy requirement of corroboration evidence before an uninsured motorist claim can be brought in a no-contact accident contravenes the policy of Missouri's uninsured motorist statute. The summary judgment is therefore reversed and the cause remanded.

Kramer was injured in a single-vehicle accident while he was an employee of LaFarge. At the time of the accident, Kramer was driving a cement mixer truck owned by LaFarge, and the truck was insured by a motor vehicle liability policy issued by INA. The parties do not dispute Kramer's claim that the accident occurred because an approaching vehicle crossed the center-line, causing Kramer's vehicle to overturn due to his attempt to avoid a collision. There was no physical contact

between the mixer truck and the other vehicle, and neither the other vehicle nor its driver has been identified. In the accident, Kramer sustained injuries to his neck, back, right shoulder, and right arm.

Kramer brought suit against both La-Farge and INA, seeking recovery under the uninsured motorist provisions of La-Farge's motor vehicle liability insurance policy provided by INA.[1] INA and La-Farge filed a joint motion for summary judgment, claiming that the insurance policy contained a coverage exclusion that operated to prevent coverage for injuries to LaFarge's employees. Alternatively, INA and LaFarge argued that Kramer's claim was barred because he could not meet requirements of the policy language necessitating corroboration of the facts of the accident by competent evidence other than Kramer's testimony.

The trial court sustained the motion, and judgment was entered in favor of LaFarge and INA. The trial court's judgment does not set forth the basis or reasoning for the trial court's decision. This appeal follows.

## STANDARD OF REVIEW

■ This court engages in *de novo* review of a trial court's entry of summary judgment. *Carlton v. Phillips*, 926 S.W.2d 8, 10 (Mo.App.1996). The court must view the facts presented in the light most favorable to the party against whom summary judgment was entered. *Id.* If the record, as submitted to the trial court, does not entitle the moving party to judgment as a matter of law or if there is a genuine dispute of material fact, then the judgment must be reversed. *Id.* at 10–11. We, therefore, turn to the issues presented by

Kramer's appeal of the summary judgment entered against him.

## THE EMPLOYEE EXCLUSION CLAUSE

Two points are raised by Kramer in his appeal. Kramer first contends that the trial court incorrectly held that an "employee exclusion" clause within the motor vehicle liability provisions of an insurance policy can bar recovery under the uninsured motorist provisions of that policy. The essence of Kramer's argument is that such an application of the exclusion contravenes the uninsured motorist statute § 379.203, RSMo. INA and LaFarge respond that the exclusion is rational and authorized by § 303.190.5, RSMo.

The employee exclusion in the INA policy is contained in Policy Exclusion No. 4, which bars claims for:

"Bodily injury" to:

a. An employee of the "insured" arising out of and in the course of employment by the "insured"; or

b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

---

1. Kramer sued LaFarge as a self-insurer because he was not originally certain whether INA was its insurer. Although it was subsequently determined that INA did insure La-

Farge, no motion has been made to dismiss LaFarge and no issue about its presence in the case is raised here.

This policy language clearly operates to bar any claims under the policy for personal injury by an employee of the insured (LaFarge).

INA and LaFarge argue that the legislature has carved out an employee exception within the Motor Vehicle Financial Responsibility Law (MVFRL). That exception provides that:

> Such motor vehicle liability policy need not insure any liability pursuant to any workers' compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such motor vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured.

Section 303.190.5, RSMo. This exception serves the purpose of "distinguishing the employer's liability to his employees from ... his liability to the general public...." *Zink v. Allis*, 650 S.W.2d 320, 324 (Mo. App.1983). It removes from an employer "'the onerous requirement of insuring his employees under his public liability insurance policy, such employees being already protected by the workmen's compensation statutes.'" *Id.* The reported cases have generally approved of policy provisions incorporating an employee exception to coverage. *See, e.g., Northland Ins. Co. v. Bess*, 869 S.W.2d 157, 158–59 (Mo.App. 1993).

The legislature also requires mandatory uninsured motorist coverage as part of any motor vehicle liability policy. *See* § 379.203, RSMo. This requirement extends to policies issued to employers having a fleet of five or more passenger vehicles. Section 379.203.1, RSMo. The question is whether the employee exception authorized by § 303.190.5, RSMo,

trumps the mandatory uninsured motorist requirement of § 379.203, RSMo., where the uninsured motorist is not a fellow employee of the injured employee.

## PUBLIC POLICY OF UNINSURED MOTOR VEHICLE COVERAGE

■ Uninsured motor vehicle coverage generally "is designed to close a gap in the protection afforded the public under existing financial responsibility law and, within fixed limits, to provide recompense to innocent persons injured by motorists who lack financial responsibility." *Webb v. State Farm Mut. Auto. Ins. Co.*, 479 S.W.2d 148, 151 (Mo.App.1972) (internal citations omitted). Missouri's uninsured motorist law was enacted in 1967 and expresses a public policy that each insured under such coverage have available the full statutory minimum coverage without diminishment by contractual limitation unless express statutory authority is provided. *Douthet v. State Farm Mut. Auto. Ins. Co.*, 546 S.W.2d 156, 159 (Mo. banc 1977). Uninsured motor vehicle statutes are highly remedial in purpose. *Webb*, 479 S.W.2d. at 151. Our courts have "been liberal in applying the uninsured motorist statute to invalidate attempts by insurers to reduce benefits under applicable coverage, [but][un]willing to use the statute to create coverage." *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 147 (Mo. banc 1980). Thus our courts have found that a motorist with policy limits less than the requirements of the safety responsibility laws is "uninsured" to the extent of the difference. *Ragsdale v. Armstrong*, 916 S.W.2d 783, 785 (Mo. banc 1996) (four judges concurring in result). We have found that, where the owner had a policy of insurance but did not have coverage for a negligent entrustment claim brought against the owner, the vehicle was "uninsured." *Arnold v. Am.*

*Family Mut. Ins. Co.*, 987 S.W.2d 537, 541 (Mo.App.1999). It has been held that the provisions of uninsured motor vehicle coverage are triggered when the tortfeasor's insurer denies coverage, even when the denial was legally invalid. *Omaha Indem. Co. v. Pall, Inc.*, 817 S.W.2d 491, 498–99 (Mo.App.1991). These rulings evidence a recognition of the public policy of uninsured motor vehicle coverage and a resistance to contractual provisions that do not comply with the legislature's intent. Uninsured motor vehicle coverage is mandated by statute and the statutory directives "enter into and form a part of the ... insurance contracts to which they are pertinent as fully as if such provisions were written into the policies." *Billings v. State Farm Mut. Ins. Co.*, 741 S.W.2d 886, 888 (Mo. App.1987). Nevertheless, the parties are free to create the insurance contract of their choice as long as the policy provisions meet the requirements of the law and do not conflict with it. *Id.*

## THE VALIDITY OF THE EMPLOYEE EXCLUSION CLAUSE IN THE CONTEXT OF AN UNINSURED MOTOR VEHICLE CLAIM

 INA and LaFarge argue that § 303.190, RSMo, sets forth the required contents of a motor vehicle liability policy and that subsection 5 authorizes what is denominated as a employee exclusion clause. It states in applicable part:

Such motor vehicle *liability policy* need not insure any liability pursuant to any workers' compensation law nor any liability on account of bodily injury or death of an employee of the insured while engaged in the employment ... of the insured ...

Section 303.190.5.

They further contend that Policy Exclusion No. 4 is exactly such an approved clause as described by § 303.190.5. Kramer argues in response that application of the employee exclusion clause under the facts of this case would frustrate and ignore the intent and public policy of § 379.203. He argues that acceptance of INA and LaFarge's position would render all uninsured coverage in employers' policies illusory. INA responds that its theory would provide uninsured coverage when a non-employee was operating the employer's vehicle or when the employee was using the employer's vehicle for personal purposes or after hours.

Kramer directs our attention to *Heavens v. Laclede Gas Co.*, 755 S.W.2d 331 (Mo.App.1988). The employee in *Heavens* was operating a company vehicle and was involved in a collision with an uninsured motorist. Ultimately the employee sued the uninsured tortfeasor and the employee's employer as a self-insurer for uninsured motorist benefits. The employer argued that the claim against him was precluded by the exclusive remedy provisions of the workers' compensation law. The court rejected that argument reasoning that the employee sought to recover against the employer in its *role as insurer*. *Id.* at 332. The court went on to state that a self-insurer agrees to pay as would an insurance company writing a vehicle liability policy that would be required to have uninsured motorist coverage pursuant to § 379.203.1. *Id.* Kramer relies specifically on language in *Heavens* stating that if the "employer had purchased insurance for the vehicle rather than self-insuring, the insurer would have paid under the uninsured motorist provision of that policy." *Id.* The *Heavens* court cited no direct authority for that statement instead referring generally to cases [2] holding

**2.** *Douthet v. State Farm Mut. Auto. Ins. Co.,* 546 S.W.2d 156 (Mo. banc 1977); *Linderer v.*

that an employer's uninsured motorist provision was considered to provide the primary coverage for an employee. INA does not assist us in responding to Kramer's reliance upon *Heavens,* not bothering to even mention, let alone discuss, that decision. Nevertheless, it is obvious that the statement relied upon by Kramer is dicta and not immediately dispositive of Kramer's claim. Moreover, neither *Heavens* nor the footnoted cases involved an issue of the validity of an employee exclusion clause in a claim under the uninsured motorist coverage of an insurance policy. The court recognized a potential statutory conflict between § 303.190.5 (authorizing an employee exclusion clause) and §§ 303.025 and 379.203 (mandatory insurance and mandatory uninsured motorist coverage). *Id.* at 333. However, as that issue was not directly before the *Heavens* court, it was not decided at that time.

In arguing for the validity of the employee exclusion in the uninsured motorist context, INA and LaFarge rely primarily upon three cases: *Zink v. Allis,* 650 S.W.2d 320 (Mo.App.1983); *Truck Insurance Exchange v. Gilliham,* 659 S.W.2d 16 (Mo.App.1983); and *Seymour v. Lakewood Hills Association,* 927 S.W.2d 405 (Mo.App.1996). In each of these cases, the injured employee was not the driver of the company vehicle in question, but instead was a passenger. In each case, the motor vehicle liability policy held by the employer contained a fellow-employee exclusion clause, excluding claims by an employee for injuries caused due to the actions of another employee.[3]

In *Zink,* the plaintiffs were the survivors of an employee killed while a passenger in a company truck driven by another employee. *See Zink,* 650 S.W.2d at 321. The substance of the plaintiffs' argument was that, due to a fellow-employee exclusion in the liability policy, the negligent driver was "uninsured" for purposes of determining whether that policy's uninsured motorist coverage was applicable. *Id.* at 322.

The court in *Zink* first opined that the plaintiffs "did not really base their claim upon the terms of the uninsured motorist portion of the policy itself." *Id.* at 321. The *Zink* court found, based upon policy language, that liability under the uninsured motorist policy was contingent on whether the *vehicle* in which the decedent was riding was insured, not whether the driver was insured. *Id.* at 321. As a liability policy covered the vehicle in question, the plaintiffs could not directly avail themselves of the uninsured motorist coverage. *Id.* at 322–23.

The court then addressed the issue of whether the fellow-employee exclusion within the policy caused that policy to fail to meet the mandatory minimum requirements of the uninsured motorist statute. The court found that a fellow-employee exclusion is rational, reflecting the different responsibilities owed by an employer to its employees, as opposed to those owed to the general public. *Id.* at 323–24 (quoting Job A. Sandoval, Annotation, Construction and Applicability of Provision of Automobile Liability Policy Expressly Excluding From Coverage Liability Arising from Actions Between Fellow Employees, ... 45 A.L.R.3d 288, 295 (1972)). That exclusion is premised, at least in part, upon

---

*Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo.App.1980); *Steinhaeufel v. Reliance Ins. Co.,* 495 S.W.2d 463 (Mo.App.1973).

**3.** In only one of these cases did the opinion set forth the exact policy language. In each the court referred to a "fellow employee exclusion" without indicating whether the policy language specifically referred to fellow employees.

the employee's protection under the workers' compensation statutes. *Id.* The *Zink* court then held that the fellow-employee exclusion within the policy barred the plaintiff's claim under the employer's uninsured motorist coverage. *Id.* at 324. This holding was followed, without substantial analysis by the court, in the *Truck Insurance Exchange* case. 659 S.W.2d at 17.

In *Seymour,* the plaintiff was an employee injured as a passenger on a trash truck driven by another employee, when that vehicle struck a tree. The plaintiff raised a claim against the employer's uninsured motorist coverage (he also attempted to recover damages from the Lakewood Hills Association on a premises liability theory). The trial court sustained the insurance company's motion for summary judgment, premised upon the grounds that the uninsured motorist insurance policy contained a "fellow-employee" coverage exclusion. On appeal, the Eastern District initially followed the approach of *Zink,* noting that the vehicle was not truly an uninsured motor vehicle, as it was covered by a liability policy.

Citing § 303.190.5, though, the *Seymour* court then made a much broader statement, declaring that "uninsured motorist coverage need not extend to '*any* liability on account of bodily injury or death of an employee of the insured while engaged in the employment, other than domestic, of the insured.'" *Seymour,* 927 S.W.2d at 408 (emphasis added). As the exclusion within the policy (a "fellow employee" exclusion) was authorized under § 303.190.5, the court held that the exclusion was not in violation of public policy. *Id.* It ultimately determined that the plaintiff could not recover under the employer's uninsured motorist policy due to the fellow employee exclusion in the policy.

*Zink, Truck Exchange,* and *Seymour* are factually distinguishable from the case before us. Each of these prior cases essentially involved claims by employees for injuries arising from the negligence of fellow employees. The only reason the plaintiffs raised claims for coverage under their employers' uninsured motorist policies was because coverage for their direct liability claims was excluded by "fellow employee" exclusions in the employers' liability policies. Here, the substance of Kramer's claim is very different. Rather than claiming under the uninsured motorist coverage due to a failure in the employer's liability coverage (because of an employee exclusion clause), Kramer is making a direct claim against the uninsured motorist coverage as the accident was caused by an unidentified vehicle whose identity or insurance status is unknown. The question before us is whether this factual difference compels any different result under the policy considerations of § 379.203, applied in conjunction with the statutory authorization for employee exclusion clauses found in § 303.190.5.

The decisions in *Truck Insurance Exchange* and *Zink, supra,* were before the enactment of § 303.025 in 1986 (effective July 1, 1987), mandating that "[n]o owner of a motor vehicle ... shall ... authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section." The court in *Heavens,* as discussed earlier, said that "[a]n analysis of the policies behind mandatory insurance and mandatory uninsured motorist coverage might reveal a conflict between these mandatory coverages and § 303.190.5. This case, however does not require us to decide that issue." 755 S.W.2d at 333.[4] In *Seymour,* the

---

4. The court in *Zink* considered a similar argument of conflicting policy in the context of the

Safety Responsibility Law, the predecessor to § 303.025, but rejected it.

court did not discuss at any length any such conflicting legislative policies but did hold that application of a § 303.190.5 authorized exclusion clause to a fellow employee was consistent with the Motor Vehicle Financial Responsibility Law. 927 S.W.2d at 408.

We also need not consider whether any such conflict exists. It is possible to resolve the issue herein in a manner consistent with the principles enunciated in the cases relied upon by INA and particularly the *Seymour* decision. As noted there, "[b]oth the policy and statutory definitions of 'uninsured motor vehicle' refer to a vehicle for which coverage is lacking, not an individual operator." *Seymour*, 927 S.W.2d at 408. The court recognized a distinction that we, as is discussed below, find crucial and dispositive:

> In determining what constitutes an uninsured motor vehicle, the *focus is on the vehicle* and not whether the driver is uninsured under the circumstances of any particular accident. *An uninsured motor vehicle is one which is not insured* .... the garbage truck was at all times insured by a liability policy. Accordingly, the truck was an insured vehicle. This is true even though Seymour's status as a fellow employee of Marchbanks prevents his recovery under the policy. (emphasis added) (internal citations omitted).

*Id.* Here, however, Kramer does not contend as in *Truck Exchange, Zink, and Seymour* that his employer's vehicle was uninsured. In each of those cases the employee was seeking to accomplish through an uninsured motorist claim what he could not do directly: recover (other than through workers compensation) for direct liability of his employer for the negligence of a fellow employee under the doctrine of respondeat superior. Such recovery is arguably exactly what

§ 303.190.5 was intended to allow to be excluded under an employer's automobile liability policy. The references to "liability" of the insured/employer in § 303.190.5 seem clearly to refer to liability based on status as an employer. In a case such as herein, Kramer's claim against the uninsured motorist coverage of the policy is not based upon or grounded in any way on LaFarge's status as his employer. It is the liability of the unidentified driver that forms the basis for his claim.

We hold that the employee exclusion clause in INA's policy does not prevent a claim for uninsured motorist benefits for injuries caused by the operator of an uninsured motor vehicle that is not owned or operated by the employer or by another employee acting in the course of employment. That holding is consistent with both the principles of mandatory uninsured motorist coverage expressed in § 379.203 and the statutory authorization of an employee exclusion clause in § 303.190.5. It also is consistent with the holding in *Heavens* and treats equally those employers who satisfy the Motor Vehicle Financial Responsibility Law by purchasing insurance and those who do so by self-insuring. Moreover it is consistent with our view of the result that was contemplated in such a situation by the court in *Seymour*, which said: "Furthermore, the accident in this case involved only the insured vehicle. Section 379.203 is designed to require coverage only against injuries arising from collisions with *other vehicles* lacking liability coverage." *Seymour*, 927 S.W.2d at 408–09 (italics in original).

We therefore find that application of the employee exclusion within the INA policy to an accident caused by an uninsured non-employee is not authorized by § 303.190.5 and would contravene the uninsured motorist statute. Kramer is not, therefore,

precluded from raising his claim against the uninsured motorist coverage of the INA policy by that exclusion. We must now turn to Kramer's second point on appeal, as it concerns an alternative basis for the trial court's grant of summary judgment in favor of INA and LaFarge.

## INA'S DEFINITION OF AN "UNINSURED MOTOR VEHICLE"

■ Kramer's second point on appeal concerns the policy definition of "uninsured motor vehicle." He contends that the policy defines this term in a manner inconsistent with the uninsured motorist statute. The policy definition of "uninsured motor vehicle" is as follows (italics added):

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

\* \* \*

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:
(1) Hit an "insured", a covered "auto" or a vehicle an "insured" is occupying; or
(2) Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured is occupying," *provided the facts of the "accident" can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such "accident."*

Here, there was no contact between Kramer's vehicle and the "phantom vehicle" which caused his vehicle to leave the roadway and overturn. This policy definition, therefore, requires Kramer to put forward corroboration of the facts of the accident or be barred from seeking recovery for his injuries because the policy's definition of an uninsured motor vehicle does not include a no-contact phantom vehicle in the absence of competent corroborating evidence. The policy does not attempt to define what evidence would be either competent or corroborating. Kramer contends that this definition contravenes the uninsured motorist statute because it impermissibly precludes claims by injured parties when there are no other witnesses to the accident. INA and LaFarge reply that the definition is clear and unambiguous, and is intended to fill the gaps within the statutory definition of "uninsured motor vehicle."

We agree with Kramer that the definition places an impermissible burden upon a claimant in a "phantom vehicle" no-contact accident. The uninsured motorist statute is intended to provide insured claimants with "coverage parallel to that they would have had if the accident had been caused by a vehicle that had the required liability coverage." *Rister v. State Farm Mut. Auto. Ins. Co.,* 668 S.W.2d 132, 137 (Mo.App.1984). Here, the policy provisions render irrelevant the testimony of the injured party regarding his claim, regardless of whether the testimony is credible or not. Had Kramer been involved in an accident with an insured vehicle, he could establish a submissible claim, at least with regard to liability, through his own testimony alone. Similarly, if the phantom vehicle had made contact with Kramer's vehicle no corroboration would be required under the policy. (Presumably the evidence of the collision itself would supply the corroboration deemed necessary by the insurer). The law generally does not require corroboration nor would we permit any modern day rule that rendered testimony incompetent merely because it was the testimony of the claimant.

Although mandatory uninsured motorist coverage was first enacted in 1967, insurers could, and many did, exclude such coverage if there was no contact between the insured and uninsured vehicles. *See, e.g. Ward v. Allstate Ins. Co.*, 514 S.W.2d 576, 578–79 (Mo. banc 1974). In 1982 the legislature amended § 379.203.1 to provide:

Such legal entitlement exists although the identity of the owner of operator cannot be established because such owner or operator and the motor vehicle departed the scene of the occurrence occasioning such bodily injury, sickness or disease, including death before identification. *It also exists whether or not physical contact was made between the uninsured motor vehicle and the insured or the insured's motor vehicle.*

1982 Mo. Laws 602 (emphasis added). INA contends that its requirement of corroboration in no-contact cases does not offend the statute as amended.

INA relies upon *Rister v. State Farm Mutual Automobile Ins. Co.*, 668 S.W.2d 132, 134 (Mo.App.1984), for this conclusion:

However, that statute [§ 379.203] does not fully define "uninsured motorist vehicles". Nor does it fully declare the terms and conditions upon which uninsured motor vehicle insurance must be extended. In any given case, whether or not uninsured motor vehicle insurance is applicable, in the first instance is a matter of construction of the insurance contract.

INA contends that it has merely supplemented the definition of "uninsured motor vehicle" in a way that does not contravene § 379.203. Kramer argues that the corroboration requirement attempts to limit the coverage mandated by § 379.203.

In *Rister*, the tortfeasor's insurer initially denied coverage and the victim's survivors sought recovery under the uninsured motorist coverage of his own policy. Subsequently the tortfeasor's insurer entered into a settlement with the survivors, but they nevertheless proceeded to judgment against the uninsured motorist carrier. The policy in question defined an uninsured motor vehicle as a "motor vehicle insured ... for bodily injury liability ... but the insuring company denies coverage or has become insolvent." *Rister*, 668 S.W.2d at 133. The court found that when the tortfeasor's insurer settled with the survivors it "no longer denied liability coverage." *Id.* at 136. The court then construed the uninsured motorist definition in the deceased's own policy as not to include an initial but subsequently effectively withdrawn denial, and held that such construction did not violate the principles of § 379.203, citing the principle of construction argued by INA above. *Id.* at 137. Although subsequent decisions have distinguished or limited this specific portion of the holding to the particular sequence of events involved, the merits of the specific holding are not at issue here nor is the general principle relied upon by INA persuasive on the issue before us.

Much more persuasive are the principles and holding in *Dawson v. Denney–Parker*, 967 S.W.2d 90 (Mo.App.1998). There an unidentified vehicle caused Ms. Dawson to swerve her vehicle (without contact between the two) and collide with a third automobile. Her insurance policy, although not explicitly quoted, apparently still contained, despite the 1982 amendment to § 379.203, a provision requiring contact before uninsured motorist coverage would apply. The insurer argued that this limitation was invalid only to the extent of the statutory minimum required coverage of $25,000 and should be upheld to the extent of additional uninsured coverage that its policy provided. The court refused to enforce the contact requirement, even as to the amount in excess of

the statutory minimums, holding that "the 1982 amendment prohibits insurers from restricting coverage to insureds legally entitled to recover damages from uninsured motorists regardless of whether there was physical contact." *Id.* at 93. INA argues that *Dawson* is "clearly distinguishable" but fails to convincingly argue why it is ineffective and void to impose a contact requirement even beyond minimum limits coverage, as held in *Dawson*, but it would be permissible for INA to impose additional limitations (corroboration) on the applicability of uninsured coverage in no-contact situations for even the minimum limits. The attempt by INA to restrict and limit uninsured motorist coverage for non-contact situations to those where corroboration evidence exists is in contradiction to both the express language and policy of § 379.203 and therefore void.

Having found that the employee exclusion within the INA policy does not operate to bar Kramer's claim against his employer's uninsured motorist coverage and that the policy's corroboration requirement contravenes the uninsured motorist statute, we hold that the trial court improperly granted summary judgment in favor of respondents INA and LaFarge. We therefore reverse the trial court's entry of summary judgment and remand this case for further proceedings consistent with this opinion.

PAUL M. SPINDEN, Chief Judge, and THOMAS H. NEWTON, Judge, concur.